1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON,

GENERAL CASUALTY COMPANY
OF WISCONSIN,

                    Plaintiff,

     vs.

VALOR LAW GROUP, P.S.; and
MAVERICK HOLDINGS, LLC;
                 Defendants.

Cause No.

**COMPLAINT**

     Plaintiff General Casualty Company of Wisconsin ("General Casualty")

states and pleads as follows:

## I. PARTIES

     1.1    General Casualty is a Wisconsin corporation with its principal place

of business in Wisconsin.

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington 98101
(206) 624-1800/Fax (206) 624-3585

1.2     On information and belief, Defendant Valor Law Group P.S. ("Valor") is a Washington professional services corporation with its principal place of business in Washington State. Valor was at all relevant times engaged in commercial activity in Washington State.

1.3     On information and belief, Defendant Maverick Holdings, LLC ("Maverick") is a Washington limited liability company whose members are citizens of Washington State. Maverick was at all relevant times engaged in commercial activity in Washington State.

## II. JURISDICTION AND VENUE

2.1     This action is between citizens of different states.

2.2     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as set forth more particularly below.

2.3     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

2.4     An actual justiciable controversy exists between General Casualty and Defendants within the meaning of 28 U.S.C. § 2201, *et seq.* regarding the scope and extent of insurance coverage provided under the General Casualty policy, as set forth more particularly below.

2.5     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial portion of the events giving rise to the insurance claim occurred in this District.

COMPLAINT – 2
USDC ED WA CAUSE NO.

## III. GENERAL ALLEGATIONS

3.1     General Casualty issued policy number BBP001230800 to Valor for the period from April 1, 2020 through April 1, 2021 (the "Policy"). Maverick is listed as an additional insured by endorsement. A redacted certified copy of the Policy is **Exhibit 1**.

3.2     Valor and Maverick (collectively, "Defendants") were sued in the underlying lawsuit of *Taylor v Valor Law*, Chelan County Superior Court No. 20-2-00461-04 ("Underlying Lawsuit"). A copy of the amended complaint in the Underlying Lawsuit is **Exhibit 2**.

3.3     In the Underlying Lawsuit, the plaintiff Estate alleges damages that include $240,000 in attorney fees, $400,000 borrowed from the decedent and an additional unspecified amount for diminution in value, as set forth in **Exhibit 2**.

3.4     Valor and Maverick tendered defense and indemnity of the Underlying Lawsuit to General Casualty under the Policy. General Casualty agreed to defend under a reservation of rights.

## IV. CLAIM FOR DECLARATORY RELIEF

4.1     General Casualty incorporates by reference the allegations of all paragraphs above as if fully alleged herein.

COMPLAINT – 3
USDC ED WA CAUSE NO.

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington 98101
(206) 624-1800/Fax (206) 624-3585

4.2     In accordance with 28 U.S.C. §2201, General Casualty seeks a ruling from this Court that the Policy does not provide coverage for the Underlying Lawsuit.

4.3     An actual justiciable controversy exists between General Casualty and Defendants concerning whether there is insurance coverage under the Policy for the claims asserted in the Underlying Lawsuit.

4.4     The Policy does not provide coverage for the claims in the Underlying Lawsuit under the policy language or the law including, but not limited to, the following potentially applicable policy provisions or legal grounds:

(a)     There is no "property damage" caused by an "occurrence" during the policy period.

(b)     There is no coverage for "property damage" that was known to have occurred, in whole or in part, prior to the policy period, and any continuation, change or resumption of such "property damage" during or after the policy period.

(c)     The exclusion for "property damage" expected or intended from the standpoint of the insured.

(d)     The exclusion for professional services

.

COMPLAINT – 4
USDC ED WA CAUSE NO.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

(e)     The exclusion for "property damage" to property you own, rent or occupy.

(f)     The Policy provides no coverage for "personal and advertising injury."

(g)     Maverick is not an insured to the extent the allegations are outside of its additional insured coverage.

(h)     The Policy does not provide coverage to the extent that the alleged damages are not the result of fortuitous events or are a known loss.

(i)     Under other such further policy language or other grounds that restrict or preclude coverage under the Policy or under the law.

## V. CLAIM FOR REIMBURSEMENT OF DEFENSE COSTS

5.1     General Casualty incorporates by reference the allegations of all paragraphs above as if fully alleged herein.

5.2     The Policy includes a "Washington Changes – Defense Costs" Endorsement, Form No. BP 06 12 11 13, that provides for the reimbursement of defense costs.

5.3     General Casualty is entitled to reimbursement of all defense costs paid in connection with the defense it is providing in the Underlying Lawsuit.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

## VI. RESERVATION OF RIGHT TO AMEND

6.1    General Casualty reserves the right to amend its complaint, in whole or in part, as it obtains additional facts through investigation and discovery.

## VII. PRAYER FOR RELIEF

7.1    Wherefore, General Casualty prays for judgment as follows:

(a)    That the Court render declaratory judgment in favor of General Casualty;

(b)    That the Court declare the rights, duties, obligations, status and other legal relations of the parties, including a declaration that there is no insurance coverage under the Policy, that General Casualty has no duty to defend or indemnify for the claims in the Underlying Lawsuit and that General Casualty may withdraw from the defense of the Underlying Lawsuit;

(c)    That the Court award General Casualty reimbursement for all sums it has paid in the defense of the Underlying Lawsuit.

(d)    For all of General Casualty's costs and disbursements incurred herein; and

(e)    For such other relief as the Court may deem just and proper.

DATED this 15 day of June, 2021.

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington 98101
(206) 624-1800/Fax (206) 624-3585

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

SOHA & LANG, P.S.

By:  *s/Geoffrey Bedell*
    Geoffrey Bedell, WSBA # 28837
    Email: bedell@sohalang.com
    Cristin Cavanaugh, WSBA # 53251
    Email: cavanaugh@sohalang.com
    **Soha & Lang, P.S.**
    1325 Fourth Avenue, Suite 2000
    Seattle, WA  98101-2570
    Telephone:  206-624-1800
    Facsimile:   206-624-3585
    Attorneys for Plaintiff

COMPLAINT – 7
USDC ED WA CAUSE NO.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

# Exhibit 1

Policy Certification


**Al Nelson, VP – West Region UW Leader,** states that he has full access to the policy records of the **General Casualty Company of Wisconsin** and that he has examined the policy records for policy number **BBP0012308-00** issued by said company to **Valor Law Group, PS.**

Attached is a true and correct copy of said policy as it was in force for the period of **04/01/2020 to 04/01/2021.**


_____
**Al Nelson, VP – West Region UW Leader**

_____
06/04/21
Date

General Casualty Company of Wisconsin

A Stock Company



# Commercial Insurance Policy

**Home Office:**

One QBE Way
Sun Prairie, WI  53596
1-877-772-6771

**For questions or service, please contact your producer at:**

The VIP Agency Group LLC
1001 Hwy 97
Brewster, WA 98812
(509)689-0904

**Program administered by:**

ARROWHEAD GENERAL
INSURANCE AGENCY, INC.
701 B STREET, SUITE 2100
SAN DIEGO, CA 92101

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

**AH CI 8520  12 18**

# Commercial Insurance Policy Quick Reference

**In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

| | |
|---|---|
| **Policy Period** | This policy period begins at 12:01 a.m. standard time at the named insured's mailing address on the date shown in the Declarations. |

## This Commercial Insurance Policy consists of one or more Coverage Part(s). Each Coverage Part consists of several items as described below:

| | |
|---|---|
| **Declaration Pages** | The Declarations list the named insured, policy period, the coverages provided and the limits of insurance. They also show the forms and endorsements that apply to this policy. |
| **Coverage Parts** | Each Coverage Part is made up of a Coverage Form and Declaration(s), and is subject to the Common Policy Conditions. The Coverage Form describes the nature and extent of coverage provided. It also includes any conditions that apply specifically to that Coverage Part. |
| **Additional Provisions or Exclusions** | This policy may be modified by additional provisions or exclusions. When this happens, the forms which contain those provisions or exclusions will be found after the Coverage Forms. The form numbers will also appear on the Declarations. |
| **Common Policy Conditions and Conditions specific to Individual Coverage Parts** | This policy contains a Common Policy Conditions Form which lists those conditions which apply to all Coverage Parts written in the policy. Forms listing conditions which apply to individual coverage parts also appear on the Declarations. |

**This quick reference is not part of the Commercial Insurance Policy and does not provide coverage. Please read the Commercial Insurance Policy itself for actual contractual provisions.**

In witness whereof, the Company designated on the Declaration page has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declaration page and countersigned on the aforesaid Declaration page by a duly authorized representative of the company.

**Russell Johnston**
**President**

**Jose Ramon Gonzalez, Jr**
**Secretary**

BUSINESSOWNERS
BP DS 01 07 13

# BUSINESSOWNERS POLICY DECLARATIONS

**POLICY NUMBER:** BBP0012308-00          **RENEWAL OF:** BBP0004427-00

| | |
|---|---|
| **Company Name:** | General Casualty Company of Wisconsin<br>One QBE Way<br>Sun Prairie, WI 53596 |
| **Producer Name:** | The VIP Agency Group LLC<br>1001 Hwy 97<br>Brewster, WA 98812<br><br>On behalf of Arrowhead General Insurance Agency, Inc. |
| **Named Insured:** | Valor Law Group, PS<br>See Named Insured Extension |
| **Mailing Address:** | PO Box 637<br>Pateros, WA 98846 |

| Policy Period |
|---|
| **From:** 04/01/2020 |
| **To:** 04/01/2021          At 12:01 AM* Standard Time at your mailing address shown above |
| *Exceptions: 12:00 PM in Michigan and North Carolina |

| Premises Information | | |
|---|---|---|
| **Premises Number** | **Building Number** | **Premises Address:** |
| 001 | 001 | 110 W Lakeshore Dr<br>Pateros, WA 98846 |
| **Premises Number** | **Building Number** | **Mortgageholder Name:**<br><br>**Mortgageholder Address:** |

| Description Of Business |
|---|
| **Form Of Business:** ☐ **Individual**     ☐ **Partnership**     ☐ **Joint Venture**     ☐ **Limited Liability Company** |
| ☒ **Organization, Including A Corporation** (but not including a partnership, joint venture or limited liability company) |
| ☐ **Trust**     ☐ **Other** |
| **Business Description:** Offices |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**Issued:** 02/23/2020

# NAMED INSURED EXTENSION SCHEDULE

| POLICY NUMBER:<br>BBP0012308-00 | EFFECTIVE DATE:<br>04/01/2020 |
|---|---|

Valor Law Group, PS
Thomason Law & Justice PS
Thomason Justice PS

POLICY NUMBER: BBP0012308-00

**SECTION I - PROPERTY**

| Blanket Insurance |  |
| --- | --- |
| Indicate the type of property to be blanketed and the blanket limit of insurance. | |
| **Type Of Property** | **Limit Of Insurance** |
|  |  |

| Additional Coverages - Optional Higher Limits/Extended Number Of Days (Per Policy) | |
| --- | --- |
| **Coverage** | **Limit Of Insurance/Extended Number Of Days** |
| **Forgery Or Alteration** |  |
| **Business Income - Extended Number Of Days For Ordinary Payroll Expenses** | **Days** |
| **Extended Business Income - Extended Number Of Days** | **Days** |
| **Electronic Data - Increased Limit  (Section I - Property)** |  |
| **Interruption Of Computer Operations - Increased Limit** |  |

| Additional Coverage - Business Income - Ordinary Payroll Additional Exemptions | | |
| --- | --- | --- |
| **Coverage** | **Exempt Job Classifications** | **Exempt Employees** |
| **Business Income** |  |  |

| Theft Limitations - Optional Higher Limits (Per Policy) | |
| --- | --- |
| **Description of Property** | **Limit Of Insurance** |
|  |  |

POLICY NUMBER: BBP0012308-00

**Premises Number:** 001    **Building Number:** 001    **Class Code:** 63921

| Property Coverage Limits Of Insurance | | | | |
|---|---|---|---|---|
| **Type Of Property (Building Or Business Personal Property)** | **Actual Cash Value Of Building Option (Yes Or No)** | **Automatic Increase Building Limit (%)\*\*** | **Business Personal Property - Seasonal Increase (%)** | **Limit Of Insurance\*** |
| **Personal Property** | | | 25% | Included In Blanket |

\*Includes Automatic Increase Building Limit Percentage
\*\*This percentage can only vary by premises, not by building.

| Additional Coverages/Coverage Extensions Optional Higher Limits | |
|---|---|
| **Coverage** | **Limit Of Insurance** |
| **Fire Department Service Charge** | |
| **Business Income From Dependent Properties** Secondary Dependent Property    ☐ Yes  ☐ No | |
| **Accounts Receivable** | |
| **Valuable Papers and Records** | |
| **Outdoor Property** | |
| **Business Personal Property Temporarily In Portable Storage Units** | |

| Optional Coverages (Applicable only if an "X" is shown in the boxes below) | |
|---|---|
| **Coverage** | **Limit Of Insurance** |
| 1. ☐ **Outdoor Signs** | **Per Occurrence** |
| 2. ☒ **Money And Securities** | $0 **Inside The Premises** |
| | $20,000 **Outside The Premises** |
| 3. ☒ **Employee Dishonesty** | $25,000 **Per Occurrence** |
| 4. ☒ **Equipment Breakdown Protection Coverage** | |
| 5. ☐ **Burglary And Robbery (Named Peril Endorsement only)** Money And Securities (Amount included when Burglary And Robbery option is selected) | **Inside The Premises** **Outside The Premises** |
| 6. ☐ **Other:** | Specify: |

| Deductibles (Apply Per Location, Per Occurrence) | | | |
|---|---|---|---|
| **Property Deductible** | **Optional Coverage (Other Than Equipment Breakdown Protection Coverage) Deductible** | **Windstorm Or Hail Percentage Deductible** | **Earthquake/Volcanic Action Percentage Deductible** |
| $500 | $500 | N/A | |

| Optional Coverage - Equipment Breakdown Protection Coverage Deductibles | |
|---|---|
| **Optional Deductible:** | **Optional Time Deductible:** |

**Issued:** 02/23/2020

POLICY NUMBER: BBP0012308-00

## SECTION II - LIABILITY AND MEDICAL EXPENSES

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to **Section II - Liability** in the Businessowners Coverage Form and any attached endorsements.

| Coverage | Limit Of Insurance |
|---|---|
| **Liability And Medical Expenses** | $2,000,000 **Per Occurrence** |
| **Other Than Products/Completed Operations Aggregate** | $4,000,000 |
| **Products/Completed Operations Aggregate** | $4,000,000 |

| Deductible |
|---|
| Optional Property Damage Liability Deductible: N/A |
| ☐ **Per Claim (Refer To BP 07 03); Or**  ☐ **Per Occurrence (Refer To BP 07 04)** |

| Premises Number: 001   Building Number: 001   Class Code: 63921 | |
|---|---|
| **Coverage** | **Limit Of Insurance** |
| **Medical Expenses** | $10,000 **Per Person** |
| **Damage To Premises Rented To You** | $100,000 **Any One Premises** |

| Optional Coverages (Applicable only if an "X" is shown in the box below) | |
|---|---|
| ☐ **Broadened Coverage For Damage To Premises Rented To You (Refer To BP 04 55)** | **Per Occurrence** |
| ☐ **Self-storage Facilities - Customers' Goods Legal Liability (Optional Increased Limits)** | **Per Occurrence** |
| ☐ **Motels - Liability For Guests' Property (Optional Limits)** | **Per Occurrence** **Per Guest** |
| ☐ **Motels - Liability For Guests' Property In Safe Deposit Boxes** | **Per Occurrence** |

**Issued:** 02/23/2020

POLICY NUMBER: BBP0012308-00

| Endorsements Applicable Per Policy | |
|---|---|
| **Endorsement Number** | **Endorsement Title** |
| See Schedule Of Forms And Endorsements | |

**Premium:**

TOTAL POLICY PREMIUM                                                          $██████

**Policies Subject To Premium Audit:**

Audit Period:    ☐ **Annually**    ☐ **Semi-annually**    ☐ **Quarterly**    ☐ **Monthly**

| Countersignature Of Authorized Representative |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP DS 01 S 07 13**

SECTION I – PROPERTY

| Optional Coverages (Applicable only if an "X" is shown in the boxes below) | | |
|---|---|---|
| **Coverage** | **Limit Of Insurance** | |
| ☒ **Businessowners Plus Endorsement** | $ | 250,000 |
| ☐ **IWA Fabricare Advantage Extension Endorsement** | $ | **Blanket Limit** |
| ☐ **IWA Fabricare Advantage Bailees' Customers Coverage - Standard** | $ | **Per Any One Article Blanket Limit** |
| | $ | **Deductible** |
| ☐ **IWA Fabricare Advantage Bailees' Customers Coverage - Elite** | $ | **Per Article Limit** |
| | | **Limit of Insurance** |
| | $ | **Deductible** |
| **Coverage for Restoration Orders** | $ | **Per Article Limit** |
| | | **Aggregate Limit** |
| **Full Replacement Cost** | | **See Coverage Form** |
| **Additional Sub-Coverages Limits of Insurance** | | |
| **Furs in Designated Storage Enclosure** | $ | **Limit of Insurance** |
| | $ | **Per Any One Article** |
| **In Transit** | $ | **Limit of Insurance** |
| | $ | **Per Any One Article** |
| **On Premises of Insured** | $ | **Limit of Insurance** |
| | $ | **Per Any One Article** |
| **At Other Processor's** | $ | **Limit of Insurance** |
| | $ | **Per Any One Article** |
| **Accrued Charges** | $ | **Limit of Insurance** |
| | $ | **Per Any One Article** |
| **Excess Legal Liability** | $ | **Limit of Insurance** |
| | $ | **Per Any Article** |
| ☐ **Fairs or Exhibitions** | $ | **Per Occurrence** |
| ☐ **Musical Instruments Floater** | $ | |
| ☐ **Photographers Equipment Floater** | $ | |

**BP DS 01 S 07 13**

| ☐ **Physicians and Dentists Equipment Floater** | $ | |
|---|---|---|
| ☐ **Product Recall Expense Coverage** | | |
| ☐ **Wholesale - Food** | $ <br> $ | **Per Occurrence** <br> **Aggregate** |
| ☐ **Wholesale - Consumer Goods** | $ <br> $ | **Per Occurrence** <br> **Aggregate** |
| ☐ **Wholesale - All Other** | $ <br> $ | **Per Occurrence** <br> **Aggregate** |

**BP DS 01 S 07 13**

SECTION II – LIABILITY AND MEDICAL EXPENSES

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Section **II** – Liability in the Businessowners Coverage Form and any attached endorsements.

| Optional Coverages (Applicable only if an "X" is shown in the boxes below) | |
|---|---|
| **Coverage** | **Limit of Insurance** |
| ☐ **Cemetery Professional Liability Coverage** | $ **Per Occurrence**<br><br>$ **Aggregate** |
| ☐ **Dental Laboratory Professional Liability Coverage** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Florists Coverage Endorsement** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Barber Shops and Hair Salons Professional Liability** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Funeral Directors Professional Liability** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Hired Automobile** | $ **Limit** |
| ☐ **Non-owned Automobile** | $ **Limit** |
| ☐ **Liquor Liability Coverage** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Printers Errors and Omissions Liability** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Optical and Hearing Aid Establishments** | $ **Per Occurrence**<br>$ **Aggregate** |
| ☐ **Board of Governors Liability Coverage**<br><br>     **Includes Attendant Supervised Parking** | $ **Per Claim**<br>$ **Aggregate**<br><br>**Coinsurance Participation**<br>$ **Retention** |
| ☐ **Supplemental Property Damage Coverage** | $ **Per Occurrence**<br>$ **Aggregate** |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| BBP0012308-00 | 04/01/2020 |

| **NUMBER** | **TITLE** |
|---|---|
| AH CI 8520 (12-18) | Commercial Insurance Policy Jacket |
| BP DS 01 (07-13) | Businessowners Policy Declarations |
| BP 00 03 (07-13) | Businessowners Coverage Form |
| BP IN 01 (07-13) | Businessowners Coverage Form Index |
| AH IL 8525 (09-17) | Fees And Surcharge Schedule |
| AH BP 80 04 (09-17) | Lead Liability Exclusion |
| AH BP 80 07 (09-17) | Blanket Property Insurance |
| AH BP 80 13 (09-17) | Businessowners Plus Endorsement |
| AH BP 80 54 (09-17) | Notice Of Terrorism Insurance Coverage |
| AH BP 80 57 (09-17) | Exclusion - Sunlamps And Tanning Beds |
| AH BP 80 58 (09-17) | Pollutants Definition Amendment |
| AH BP 80 66 (09-17) | Welfare And Pension Plan (ERISA) Compliance |
| AH BP 80 73 (09-17) | Businessowners Enhancement Form |
| AH BP 80 84 (10-17) | Blanket Additional Insured - When Required By Written Agreement |
| AH BP 81 86 (09-17) | Asbestos Exclusion |
| AH BP 81 83 (09-17) | Nuclear, Biological, Chemical and Radiological Hazards Exclusion |
| AH BP 82 14 (09-17) | Equipment Breakdown Coverage - Washington |
| BP 01 06 (03-15) | Washington Changes |
| BP 04 10 (07-13) | Additional Insured - Owners Or Other Interests From Whom Land Has Been Leased |
| BP 04 37 (07-02) | Exclusion - Personal And Advertising Injury |
| BP 04 39 (07-02) | Abuse or Molestation Exclusion |
| BP 04 41 (07-13) | Business Income Changes - Time Period |
| BP 04 56 (07-13) | Utility Services - Direct Damage |
| BP 04 60 (01-10) | Washington Employment-related Practices Exclusion |
| BP 04 73 (01-06) | Washington Changes - Domestic Abuse |
| BP 04 83 (01-10) | Removal Of Insurance-to-value Provisions |
| BP 05 01 (07-02) | Calculation Of Premium |
| BP 05 17 (01-06) | Exclusion - Silica Or Silica-Related Dust |
| BP 05 23 (01-15) | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 38 (01-15) | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap On Losses From Certified Acts Of Terrorism |
| BP 05 42 (01-15) | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| BP 05 64 (01-15) | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) |
| BP 06 12 (11-13) | Washington Changes - Defense Costs |
| BP 06 69 (01-06) | Washington - Fungi Or Bacteria Exclusion (Liability) |
| BP 06 74 (07-13) | Washington - Stop Gap - Employers Liability Coverage |
| BP 12 06 (01-10) | Washington Loss Payable Clauses |
| BP 14 53 (07-13) | Washington - Water Back-Up And Sump Overflow |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| BBP0012308-00 | 04/01/2020 |

| NUMBER | TITLE |
|---|---|
| BP 15 04 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability - With Limited Bodily Injury Exception |
| BP 15 11 (12-16) | Exclusion - Unmanned Aircraft |
| IL P 001 (01-04) | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| AH QBCU 9000 (10-18) | Notice To Policyholders - Fraud Warnings |
| BP P 016 (05-14) | Businessowners Access Or Disclosure Of Confidential Or Personal Information Exclusions |
| AH UND 9146 (02-18) | Policyholder Notice How To Report A Claim |

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

© Insurance Services Office, Inc., 2012

**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section **I** – Property.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(6)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

(5) **Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| | ($10,000 is 20% of $50,000) |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
|    Basic Amount | $ 10,500 |
|    Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

© Insurance Services Office, Inc., 2012

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b);**

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d),** we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4),** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

    (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

    (ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

    (i) Means payroll expenses for all your employees except:

        i. Officers;

        ii. Executives;

        iii. Department Managers;

        iv. Employees under contract; and

        v. Additional Exemptions shown in the Declarations as:

            ● Job Classifications; or

            ● Employees.

    (ii) Include:

        i. Payroll;

        ii. Employee benefits, if directly related to payroll;

        iii. FICA payments you pay;

        iv. Union dues you pay; and

        v. Workers' compensation premiums.

**(2) Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

    (ii) Ends on the earlier of:

        i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

        ii. 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

© Insurance Services Office, Inc., 2012
BP 00 03 07 13

i.  **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

j.  **Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

k.  **Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

l.  **Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

   **(a)** Source of materials; or

   **(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

   **(a)** Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

   **(b)** Accept your products or services;

   **(c)** Manufacture your products for delivery to your customers under contract for sale; or

   **(d)** Attract customers to your business.

   The dependent property must be located in the coverage territory of this policy.

**(5)** Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

   **(a)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

   **(b)** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

   **(i)** Water supply services;

   **(ii)** Wastewater removal services;

   **(iii)** Communication supply services; or

   **(iv)** Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

   **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

   **(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period, as stated in Paragraph **(6)**, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

   **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

   **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(8)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

  **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

  **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**(4)** This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

© Insurance Services Office, Inc., 2012

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(7)** This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

© Insurance Services Office, Inc., 2012

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I – Property**, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I** – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

© Insurance Services Office, Inc., 2012

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I** – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

**(2)** The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

(b) Requiring the tearing down of any property, including the cost of removing its debris.

(2) This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

(1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

With respect to coverage for volcanic action as set forth in **5(a), (5)(b)** and **5(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

© Insurance Services Office, Inc., 2012

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section **I** – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

    © Insurance Services Office, Inc., 2012

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

### k. Neglect

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

### l. Other Types Of Loss

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

### m. Errors Or Omissions

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

### n. Installation, Testing, Repair

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

### o. Electrical Disturbance

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** – Property.

However, we will pay for direct loss or damage caused by lightning.

### p. Continuous Or Repeated Seepage Or Leakage Of Water

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### a. Weather Conditions

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

### b. Acts Or Decisions

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

### c. Negligent Work

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2012

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**(2)** Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; and

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I – Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

**a.** In accordance with Paragraph **C.4.b.,** the Limit Of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph **5.b.,** the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

© Insurance Services Office, Inc., 2012          BP 00 03 07 13

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

    **(9)** Resume all or part of your "operations" as quickly as possible.

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

  **a.** There has been full compliance with all of the terms of this insurance; and

  **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

  **a.** At our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

  **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

  **c.** We will not pay you more than your financial interest in the Covered Property.

  **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

    **(1)** At replacement cost without deduction for depreciation, subject to the following:

      **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(i)** The Limit of Insurance under Section **I** – Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

  **i.** Of comparable material and quality; and

  **ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

  **(i)** The actual cash value of the lost or damaged property; or

  **(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

  **Example**

  The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

  Amount of recovery

  $70,000 ÷ $80,000 = .875

  .875 x $25,000 = $21,875

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

  **(i)** Until the lost or damaged property is actually repaired or replaced; and

  **(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

  However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

  **(a)** Used or secondhand merchandise held in storage or for sale;

  **(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' improvements and betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to accounts receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F.  Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section **I** – Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

### 1. Outdoor Signs

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

  **(1)** Owned by you; or

  **(2)** Owned by others but in your care, custody or control.

**b.** Paragraph **A.3.,** Covered Causes Of Loss and Paragraph **B.,** Exclusions in Section **I** – Property do not apply to this Optional Coverage, except for:

  **(1)** Paragraph **B.1.c.,** Governmental Action;

  **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

  **(3)** Paragraph **B.1.f.,** War And Military Action.

**c.** We will not pay for loss or damage caused by or resulting from:

  **(1)** Wear and tear;

  **(2)** Hidden or latent defect;

  **(3)** Rust;

  **(4)** Corrosion; or

  **(5)** Mechanical breakdown.

**d.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

**e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

### 2. Money And Securities

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

  **(1)** Theft, meaning any act of stealing;

  **(2)** Disappearance; or

  **(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to Section **I** – Property, we will not pay for loss:

  **(1)** Resulting from accounting or arithmetical errors or omissions;

  **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

  **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

  **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

    **(a)** In or on the described premises; or

    **(b)** Within a bank or savings institution; and

  **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

  **(1)** Caused by one or more persons; or

  **(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

### 3. Employee Dishonesty

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

  **(1)** Cause you to sustain loss or damage; and also

  **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

    **(a)** Any employee; or

    **(b)** Any other person or organization.

 © Insurance Services Office, Inc., 2012

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

    **(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

    **(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

  **a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

  **b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2),** Limitations, do not apply to this Optional Coverage.

  **c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

    **(1)** Paragraph **B.2.a.,** Electrical Apparatus;

    **(2)** Paragraph **B.2.d.,** Steam Apparatus; and

    **(3)** Paragraph **B.2.l.(6),** Mechanical Breakdown.

  **d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

  **e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

  **f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

  **g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

    **1.** "Computer" means:

      **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Traveler's checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

   **a.** Documents;

   **b.** Manuscripts; and

   **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

### A. Coverages

  **1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

    **b.** This insurance applies:

      **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(c)** Prior to the policy period, no insured listed under Paragraph **C.**1. Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

      **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.**1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.**1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

    © Insurance Services Office, Inc., 2012    

**f. Coverage Extension – Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**i.** Cooperate with us in the investigation, settlement or defense of the "suit";

**ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**iii.** Notify any other insurer whose coverage is available to the indemnitee; and

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

      **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(ii)** Provides us with written authorization to:

      **i.** Obtain records and other information related to the "suit"; and

      **ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

  provided that:

  **(a)** The accident takes place in the "coverage territory" and during the policy period;

  **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

  **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

© Insurance Services Office, Inc., 2012

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  **(i)** Any insured; or

  **(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

   **(a)** Advertising, broadcasting, publishing or telecasting;

   **(b)** Designing or determining content of web sites for others; or

   **(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

   **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

© Insurance Services Office, Inc., 2012

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

    **(1)** The "nuclear material":

        **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

        **(b)** Has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

    **(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

© Insurance Services Office, Inc., 2012

**(10)** "Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b);** or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

© Insurance Services Office, Inc., 2012          BP 00 03 07 13

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II** – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers; or

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

### A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** Seasonal unoccupancy; or

**(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

**(a)** Have not started; and

**(b)** Have not been contracted for;

within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

### D. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. Inspections And Surveys

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe and healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### F. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

### H. Other Insurance

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** – Property.

**2.** Business Liability Coverage is excess over:

    **a.** Any other insurance that insures for direct physical loss or damage; or

    **b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

### I. Premiums

**1.** The first Named Insured shown in the Declarations:

    **a.** Is responsible for the payment of all premiums; and

    **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© Insurance Services Office, Inc., 2012

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

  **a.** Paid to us prior to the anniversary date; and

  **b.** Determined in accordance with Paragraph **2.** above.

  Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

  If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

  **a.** Prior to a loss to your Covered Property.

  **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

    **(1)** Someone insured by this insurance;

    **(2)** A business firm:

      **(a)** Owned or controlled by you; or

      **(b)** That owns or controls you; or

    **(3)** Your tenant.

  You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

  This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

  If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# BUSINESSOWNERS COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 24 | Business Liability Coverage | 34-36 |
| Accounts Receivable Coverage Extension | 16 | Business Personal Property Coverage | 1-2 |
| Accounts Receivable Exclusion | 22 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 23 |
| Acts Or Decisions Exclusion | 22 | Business Personal Property Temporarily In Portable Storage Units Coverage Extension | 17 |
| Additional Coverages | 3-14 | Cancellation Condition | 50 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 22 | Certain Computer-related Losses Exclusion | 19 |
| "Advertisement" Definition | 46 | Changes Condition | 51 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 45 | Changes In Or Extremes Of Temperature Exclusion | 21 |
| Aircraft, Auto Or Watercraft Exclusion | 38-39 | Civil Authority Additional Coverage | 8-9 |
| Appraisal Property Loss Condition | 24 | Collapse Additional Coverage | 5-6 |
| "Auto" Definition | 46 | Collapse Exclusion | 21 |
| Bankruptcy General Condition | 45 | "Computer" Definition | 32 |
| "Bodily Injury" Definition | 46 | Concealment, Misrepresentation Or Fraud Condition | 51 |
| Building Coverage | 1 | Consequential Losses Exclusion | 20 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 23 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 21-22 |
| Business Income Additional Coverage | 6-7 | Contractual Liability Exclusion | 36 |
| Business Income And Extra Expense Exclusions | 22 | Control Of Property General Condition | 28 |
| Business Income From Dependent Properties Additional Coverage | 10-11 | "Counterfeit Money" Definition | 32 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extension – Supplementary Payments (Business Liability Coverage) | 35-36 | Employer's Liability Exclusion | 37 |
| Coverage Extensions – Section I – Property | 14-17 | Equipment Breakdown Protection Optional Coverage | 31-32 |
| "Coverage Territory" Definition | 46-47 | Errors Or Omissions Exclusion | 21 |
| Covered Causes Of Loss | 2 | Examination Of Your Books And Records Condition | 51 |
| Covered Property | 1-2 | Exclusions – Section I – Property | 17-22 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 40 | Exclusions – Section II – Liability | 36-44 |
| Damage To Property Exclusion | 40 | "Executive Officer" Definition | 47 |
| Damage To Your Product Exclusion | 40 | Expected Or Intended Injury Exclusion | 36 |
| Damage To Your Work Exclusion | 40 | Exposed Property Exclusion | 20 |
| Dampness Or Dryness Of Atmosphere Exclusion | 21 | Extended Business Income Coverage (Business Income Additional Coverage) | 7 |
| Debris Removal Additional Coverage | 3-4 | Extra Expense Additional Coverage | 7-8 |
| Deductibles | 23-24 | False Pretense Exclusion | 20 |
| Dishonesty Exclusion | 20 | Fire Department Service Charge Additional Coverage | 5 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 24 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 11-12 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 46 | Forgery Or Alteration Additional Coverage | 9 |
| Earth Movement Exclusion | 17-18 | Frozen Plumbing Exclusion | 20 |
| Electrical Apparatus Exclusion | 19-20 | "Fungi" Definition | 32 |
| Electrical Disturbance Exclusion | 21 | "Fungi", Wet Rot Or Dry Rot Exclusion | 19 |
| Electronic Data Additional Coverage | 12 | Glass Expenses Additional Coverage | 11 |
| "Electronic Data" Definition | 32 | Governmental Action Exclusion | 18 |
| Electronic Data Exclusion | 41-42 | "Hostile Fire" Definition | 47 |
| "Employee" Definition | 47 | "Impaired Property" Definition | 47 |
| Employee Dishonesty Optional Coverage | 29-31 | Increased Cost Of Construction Additional Coverage | 9-10 |

© Insurance Services Office, Inc., 2012                **BP IN 01 07 13**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Inspections And Surveys Condition | 51 | Medical Expenses Exclusions | 42-44 |
| Installation, Testing, Repair Exclusion | 21 | "Member" Definition | 32 |
| Insurance Under Two Or More Coverages Condition | 51 | Mobile Equipment Exclusion | 39 |
| "Insured Contract" Definition | 47 | "Mobile Equipment" Definition | 48 |
| Interruption Of Computer Operations Additional Coverage | 12-13 | Money And Securities Optional Coverage | 29 |
| "Leased Worker" Definition | 47 | "Money" Definition | 32 |
| Legal Action Against Us General Condition – Section II – Liability | 46 | Money Orders And "Counterfeit Money" Additional Coverage | 9 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 24 | Mortgageholders Property General Condition | 28 |
| Liability And Medical Expenses Definitions | 46-50 | Neglect Exclusion | 21 |
| Liability And Medical Expenses General Conditions | 45-46 | Negligent Work Exclusion | 22 |
| Liability And Medical Expenses Limits Of Insurance | 45 | Nesting Or Infestation Exclusion | 21 |
| Liberalization Condition | 51 | Newly Acquired Or Constructed Property Coverage Extension | 14-15 |
| Limitations | 2-3 | No Benefit To Bailee Property General Condition | 28 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 13-14 | Nuclear Energy Liability Exclusion | 42-44 |
| Limits Of Insurance – Section I – Property | 23 | Nuclear Hazard Exclusion | 18 |
| Liquor Liability Exclusion | 36-37 | "Occurrence" Definition | 48 |
| "Loading Or Unloading" Definition | 48 | "Operations" Definition | 32 |
| Loss Payment Property Loss Condition | 24-27 | Optional Coverages | 28-32 |
| "Manager" Definition | 32 | Ordinance Or Law Exclusion | 17 |
| Marring Or Scratching Exclusion | 21 | Other Insurance Condition | 51 |
| Mechanical Breakdown Exclusion | 21 | Other Types Of Loss Exclusion | 21 |
| Medical Expenses Coverage | 36 | Outdoor Property Coverage Extension | 15 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Outdoor Signs Optional Coverage | 28-29 | Property Not Covered | 2 |
| "Period Of Restoration" Definition | 32 | Recall Of Products, Work Or Impaired Property Exclusion | 40 |
| "Personal And Advertising Injury" Definition | 48 | Recovered Property Loss Condition | 27 |
| Personal And Advertising Injury Exclusion | 40-41 | Resumption Of Operations Property Loss Condition | 27 |
| Personal Effects Coverage Extension | 15 | Rust Or Other Corrosion Exclusion | 21 |
| Personal Property Off-premises Coverage Extension | 15 | Section **I** – Property | 1-33 |
| Policy Period, Coverage Territory Property General Condition | 28 | Section **II** – Liability | 34-50 |
| Pollutant Clean-up And Removal Additional Coverage | 8 | Section **III** – Common Policy Conditions | 50-52 |
| "Pollutants" Definition – Section **I** – Property | 33 | "Securities" Definition | 33 |
| "Pollutants" Definition – Section **II** – Liability | 48 | Separation Of Insureds General Condition | 46 |
| Pollution Exclusion – Section **I** – Property | 21 | Settling, Cracking, Shrinking Or Expansion Exclusion | 21 |
| Pollution Exclusion – Section **II** – Liability | 37-38 | Smog Exclusion | 21 |
| Premium Audit Condition | 52 | Smoke, Vapor, Gas Exclusion | 20 |
| Premiums Condition | 51-52 | "Specified Causes Of Loss" Definition | 33 |
| Preservation Of Property Additional Coverage | 4-5 | Steam Apparatus Exclusion | 20 |
| "Products-completed Operations Hazard" Definition | 49 | "Stock" Definition | 33 |
| Professional Services Exclusion | 39-40 | "Suit" Definition | 49 |
| "Property Damage" Definition | 49 | "Temporary Worker" Definition | 49 |
| Property Definitions | 32-33 | Transfer Of Rights Of Recovery Against Others To Us Condition | 52 |
| Property General Conditions | 28 | Transfer Of Your Rights And Duties Under This Policy Condition | 52 |
| Property Loss Conditions | 24-28 | Utility Services Exclusion | 18 |

© Insurance Services Office, Inc., 2012
BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Vacancy Property Loss Condition | 27 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 6 |
| Valuable Papers And Records Coverage Extension | 15-16 | Water Exclusion | 19 |
| "Valuable Papers And Records" Definition | 33 | Wear And Tear Exclusion | 21 |
| Violation Of Customer Protection Statutes Exclusion | 42 | Weather Conditions Exclusion | 22 |
| Virus Or Bacteria Exclusion | 19 | Who Is An Insured | 44-45 |
| "Volunteer Worker" Definition | 49 | Workers' Compensation And Similar Laws Exclusion | 37 |
| War And Military Action Exclusion | 18 | "Your Product" Definition | 49-50 |
| War Exclusion | 39 | "Your Work" Definition | 50 |

© Insurance Services Office, Inc., 2012

## Fees and Surcharge Schedule

Coverage Provided by General Casualty Company of Wisconsin

| **Policy Number** | **Named Insured** | **Agency** |
|---|---|---|
| BBP0012308-00 | Valor Law Group, PS<br>Thomason Law & Justice PS<br>Thomason Justice PS | The VIP Agency Group LLC |

Installment Service Fee – If an Installment payment plan is chosen, a $7.00 installment service fee will apply to each Statement Account installment bill.  No service fee is applied to the annual payment plan nor to the down payment on an installment payment plan.  If the policy is subsequently paid in full, no further installment service fees are applied.

Non-Sufficient Fund Fee – A $25 NSF Fee will be assessed per check returned by the financial institution.

Late Fee – A $10 Late Fee will be assessed when payment is received after the due date on the invoice.  Late fees are charged on an account invoice basis.

# Notice to Policyholders

# Potential Restrictions of Terrorism Coverage

This Notice has been prepared in conjunction with the **POTENTIAL** implementation of changes related to coverage of terrorism under your policy.

The Terrorism Risk Insurance Act established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.  That Program is subject to a termination date of December 31, 2020 unless extended by the federal government.  If the federal Program terminates, or is extended with certain changes prior to or during the term of your policy, then the treatment of terrorism under your policy will change.  This Notice is being provided to you for the purpose of summarizing potential impact on your coverage.  The summary is a brief synopsis of significant exclusionary provisions and limitations.

This Notice does **not** form a part of your insurance contract.  The Notice is designed to alert you to coverage restrictions and to other provisions in certain terrorism endorsement(s) in this policy.  If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Carefully read your policy, including the endorsements attached to your policy.

**YOUR POLICY DURING TENURE OF THE TERRORISM RISK INSURANCE PROGRAM AS THAT PROGRAM EXISTS PURSUANT TO THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2015:**

Except as described below, this policy does not contain a terrorism exclusion.  However, the policy contains an endorsement under which coverage for "certified acts of terrorism" (which is more fully defined in the endorsement but involves an act of terrorism certified by the federal government to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act) is subject to a limit on our liability pursuant to the federal Terrorism Risk Insurance Act.  Further, the absence of a terrorism exclusion does not create coverage for any loss, injury or damage that would otherwise be excluded under the policy, such as property losses excluded by the nuclear hazard or war exclusions or liability losses excluded by the war liability exclusion.

**POTENTIAL CHANGE TO YOUR POLICY:**

**Endorsement BP 05 64 is attached to your policy.  Its provisions become applicable to your policy only if certain events (one or more of them) occur.  Those events include the following:**

- If the federal Terrorism Risk Insurance Program (TRIP) terminates with respect to the type of insurance provided under this policy. (TRIP is/was scheduled to terminate at the end of December 31, 2020 unless extended by the federal government.); or

- If TRIP is extended with changes that redefine terrorism, and we are not required to make such revised coverage available to you; or

- If TRIP is extended with changes that make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other events or occurrences under this policy, and we are not required to make such revised coverage available to you; or

- If TRIP is extended with changes that increase insurers' statutory percentage deductible under TRIP for terrorism losses, or decrease the federal government's statutory percentage share in potential terrorism losses, and we are not required to make terrorism coverage available to you. Our deductible is 20% of the total of our previous year's direct earned premiums. The government's share is 80% of the terrorism losses paid by us above the deductible.

**Endorsement BP 05 64 treats terrorism as follows:**

- Coverage for loss or damage under property coverage or injury or damage under liability coverage arising out of a terrorism incident is excluded only if:
  - The total of all insured damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from the incident, exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or
  - Fifty or more persons sustain death or serious injury; or
  - **(To determine whether the threshold for property damage ($25 million) or persons injured (fifty) is exceeded, multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)**
  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
  - The terrorism event involves the release of radioactive material, and it appears that one purpose of the terrorism was to release such material; or
  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.
- The Exception Covering Certain Fire Losses applies only in certain states. If the exception applies in any states under your policy, that is indicated in the Schedule of the terrorism endorsement. If the Exception applies, the Schedule indicates the affected types of insurance in affected states. When the Exception applies, the exclusion of terrorism does not apply to direct loss or damage by fire to Covered Property, with respect to affected types of insurance in affected states.

**See the definition of terrorism for purposes of the terrorism exclusion.**

Includes copyrighted material of Insurance Services Office Inc. with its permission

BUSINESSOWNERS
AH BP 80 04 09 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion applies to **SECTION II – LIABILITY** and supersedes any provision to the contrary:

**Lead Liability**

This insurance does not apply to any liability, loss, cost or expense:

**(1)** For injury or damage arising out of the actual, alleged or threatened ingestion, inhalation or absorption of lead into a person;

**(2)** For damage to, loss of use of, or reduction in the value of a building or any property due to the actual or alleged presence of lead;

**(3)** Arising out of the removal or Abatement of lead from any building or from any property;

**(4)** Arising out of the encapsulation or containment of lead within a building;

**(5)** Arising out of any request, demand or order that any insured or other test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of lead; or

**(6)** Arising out of any claim or suit by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effect of lead.

All other terms and conditions of this policy remain unchanged.

BUSINESSOWNERS
AH BP 80 07 09 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BLANKET PROPERTY INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following replaces **Section I — Property** paragraph **C.1. Limits of Insurance:**

**1.** The most we will pay for loss or damage in any one occurrence is the sum of all the Limits of Insurance shown on the Declarations for Coverage **A.1.a.** Buildings and Coverage **A.1.b.** Business Personal Property.

**B.** This endorsement does not apply to covered losses caused by or resulting from:

**1.** Earthquake, or

**2.** Volcanic Eruption.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**BUSINESSOWNERS**
**AH BP 80 13 09 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS PLUS
# ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

With respect to the following Coverage Extensions, we will pay up to the Businessowners Plus Blanket limit shown on the Declaration for loss or damage caused by a covered cause of loss.

You may apply the Blanket limit to one or any combination of these Coverage Extensions except for coverages with Sub-Limits, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit of Insurance shown on the declaration for any one location.

Where there is a Sub-Limit stated for coverage on the Businessowners Plus Endorsement that Sub-Limit will be the only limit paid for that coverage for any one location and does not increase the Annual Aggregate limit of Insurance for this endorsement.

Coverages with Sub-Limits and Blanket Limit are excess over Limits of Insurance stated in the  Businessowners Policy, or provided by endorsement. If such coverage limits are not stated within the Businessowners Policy or provided by endorsement, the Blanket Limit and Sub-Limits then becomes primary for the following Coverages.

## ACCOUNTS RECEIVABLE

1.  You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

    **a.**  All amounts due from your customers that you are unable to collect, including sums you are unable to collect as a direct result of loss or damage to credit card slips;

    **b.**  Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    **c.**  Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

    **d.**  Other reasonable expenses that you incur to reestablish your records of accounts receivable;

    that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

2.  For accounts receivable not at the described premises, the most we will pay is $2,500.

3.  Paragraph **B. EXCLUSIONS** of **Section I — Property** of the BUSINESSOWNERS COVERAGE FORM does not apply to this Coverage Extension except for:

    **a.**  Paragraph **B.1.c.**, Governmental Action;

    **b**.  Paragraph **B.1.d.**, Nuclear Hazard;

    **c.**  Paragraph **B.1.f.**, War and Military Action;

    **d.**  Paragraph **B.2.f.**, Dishonesty;

    **e.**  Paragraph **B.2.g.**, False Pretense;

    **f.**  Paragraph **B.3.**; and

    **g.**  Paragraph **B.6.**, Accounts Receivable Exclusion.

## OUTDOOR SIGNS

We will pay for loss or damage to any outdoor sign permanently fixed in place as a result of a Covered Cause of Loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FIRE DEPARTMENT SERVICE CHARGE**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

**1.** Assumed by contract or agreement prior to loss; or

**2.** Required by local ordinance.

No deductible applies to this Coverage Extension.

**FIRE EXTINGUISHER RECHARGE EXPENSE**

We will pay for expenses you incur for the recharging of fire extinguishers or fire extinguishing systems when used to fight fire on your premises or adjacent premises.

**FIRE PROTECTIVE DEVICES**

We will pay for costs incurred to recharge or refill fire protective devices that are permanently installed in building at the insured premises. This Coverage Extension applies when such devices have been discharged by accident or in the course of their intended use to protect Covered Property from a covered cause of loss. Coverage does not apply to periodic recharge or refilling.

**MINICOMPUTER**

**1.** We will pay for loss or damage to "covered property" from any of the "covered causes of loss".

"Covered property" means electronic data processing equipment, its component parts, data and media which are:

**a.** Owned by you; or

**b.** Leased, rented or under your control and for which you are legally liable.

**2.** "Covered property" does not include:

**a.** Accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or similar documents. However, we will pay for loss to these items when in data form. This coverage is subject to paragraph **2.c.** below.

**b.** Property rented or leased to others while away from your premises;

**c.** Any data or media which cannot be replaced with other of like kind and quality;

**d.** Contraband, or property in the course of illegal transportation or trade;

**e.** Your stock in trade.

**3.** "Covered causes of loss" means those causes of loss listed in **Section I — Property**, paragraph **A.3.**, **Covered Causes of Loss**, in the BUSINESSOWNERS COVERAGE FORM, except those causes of loss listed in Paragraph **6.**, Exclusions below. Paragraph **A.4.**, Limitations, of **Section I — Property** in the BUSINESSOWNERS COVERAGE FORM does not apply to this coverage.

**4.** Additional Coverage — Collapse:

**a.** This Minicomputer Coverage is subject to Paragraph **A.5.d.** Collapse in **Section I — Property** in the BUSINESSOWNERS COVERAGE FORM.

**b.** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to "covered property" caused by a collapse of personal property only the personal property which collapses is inside a building insured under this policy.

**c.** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**5.** The following paragraphs apply to this Minicomputer Coverage Extension.

**a.** The actual and necessary Extra Expense you sustain due to direct physical loss to Covered Property as a result of a Covered Cause of Loss. Extra Expenses means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss to Covered Property.

**b.** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

**c.** We will pay for loss to Covered Property resulting from a Covered Cause of Loss while the property is in transit or at a temporary location. Payments made under this Paragraph **5.** are part of, not in addition to, the Businessowners Plus Blanket Limit shown on the Declarations.

**6.** Exclusions.

**a.** Section **B. EXCLUSIONS**, of the Businessowners Coverage Form does not apply to this Coverage Extension, except for:

**(1)** Paragraph **B.1.c.**, Governmental Action;

**(2)** Paragraph **B.1.d.**, Nuclear Hazard;

**(3)** Paragraph **B.1.f.**, War and Military Action.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AH BP 80 13 09 17

**b.** We will not pay for loss or damage caused by or resulting from any of the following:

**(1)** Faulty workmanship or material or error or omission in design of the Covered Property. However:

**(a)** If loss or damage by fire or explosion results, we will pay for that resulting loss or damage;

**(b)** We will pay for resulting damage or expense for data or media;

**(c)** We will pay for the resulting loss or damage to data processing equipment.

**(2)** Any quality in the property that causes it to damage or destroy itself, wear and tear, insects, gradual deterioration or depreciation;

**(3)** Dishonest acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives, or anyone to whom you entrust the property for any purpose:

**(a)** Acting alone or in collusion with others;

**(b)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

**(4)** Dryness or dampness of atmosphere, extremes of temperature, corrosion, or rust unless directly resulting from loss to the data processing system's heating or air conditioning facilities caused by a Covered Cause of Loss;

**(5)** Actual work upon the Covered Property. However:

**(a)** If loss or damage by fire or explosion results, we will pay for that resulting loss or damage to the data or media;

**(b)** We will pay for the resulting loss or damage to data processing equipment.

**(6)** Error in machine programming or instructions to the machine;

**(7)** The enforcement of any state or municipal law or ordinance unless such liability is specifically assumed elsewhere in this Coverage Extension.

**(8)** Delay, loss of profit, loss of use or loss of market;

**(9)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense;

**(10)** Unauthorized instructions to transfer property to any person or to any place.

**7.** The value of the Covered Property will be determined as follows:

**a.** Equipment will be valued per the Loss Payment Condition, item **5.d.** of section **E. Property Loss Conditions**;

**b.** Data at the actual cost of reproducing the data. If data is not replaced or reproduced, then the cost of blank media;

**c.** Media at the actual cost to repair or replace the property with material of like kind and quality.

## VALUABLE PAPERS AND RECORDS

**1.** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on "valuable papers and records" for which duplicates do not exist.

**2.** This Coverage Extension does not apply to:

**a.** Property held as samples or for delivery after sale;

**b.** Property in storage away from the premises shown in the Declarations.

**3.** For "valuable papers and records" not at the described premises, the most we will pay is $2,500.

**4.** Section **B. EXCLUSIONS** of the BUSINESSOWNERS COVERAGE FORM does not apply to this Coverage Extension except for:

**a.** Paragraph **B.1.c.**, Governmental Action;

**b.** Paragraph **B.1.d.**, Nuclear Hazard;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Paragraph **B.1.f.**, War and Military Action;

d. Paragraph **B.2.f.**, Dishonesty;

e. Paragraph **B.2.g.**, False Pretense;

f. Paragraph **B.3.**; and

g. Paragraph **B.6.**, Accounts Receivable and "Valuable Papers and Records" Exclusions.

## ARSON REWARD

We will pay up to $10,000 for information which leads to an arson conviction in connection with a fire loss covered under this policy. Regardless of the number of persons involved in providing information, our liability under this Coverage Extension shall not be increased.

## BUSINESS INCOME FROM DEPENDENT PROPERTIES

1. We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

   However, this Coverage Extension does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Coverage Extension will not continue once the other property is repaired, rebuilt or replaced.

   The most we will pay under this Coverage Extension is $25,000.

2. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

   a. Source of materials; or

   b. Outlet for your products.

3. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. Dependent property means property owned by others whom you depend on to:

   a. Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

   b. Accept your products or services;

c. Manufacture your products for delivery to your customers under contract for sale; or

d. Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

5. The coverage period for Business Income under this Coverage Extension:

   a. Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

   b. Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

6. The Business Income coverage period, as stated in Paragraph **5.**, does not include any increased period required due to the enforcement of any ordinance or law that:

   a. Regulates the construction, use or repair, or requires the tearing down of any property; or

   b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not reduce the Business Income coverage period.

7. The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

## COST OF PREPARING INVENTORY

If Covered Business Personal Property is lost or damaged as a result of a Covered Cause of Loss and we request that you provide a completed physical and book inventory of the damaged and undamaged property to prove the amount of the loss, we will reimburse you up to $5,000 for your necessary and reasonable expenses to prepare that inventory.

## EMPLOYEE DISHONESTY

1. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

   a. Cause you to sustain loss or damage; and also

b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(1) Any "employee"; or

(2) Any other person or organization.

2. We will not pay for loss or damage:

a. Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

b. Resulting from any dishonest act committed by any of your "employees" (except as provided in Paragraph **a.)**, "managers" or directors:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise.

c. The only proof of which as to its existence or amount is:

(1) An inventory computation; or

(2) A profit and loss computation.

3. All loss or damage:

a. Caused by one or more persons; or

b. Involving a single act or series of acts;

is considered one occurrence.

The most we will pay for loss or damage in any one occurrence is $15,000.

4. If any loss is covered:

a. Partly by this insurance; and

b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

The most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

5. This Coverage Extension is cancelled as to any "employee" immediately upon discovery by:

a. You; or

b. Any of your partners, "members", "managers", officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" before or after being hired by you.

6. We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

7. If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay, provided:

a. This Coverage Extension became effective at the time of cancellation or termination of the prior insurance; and

b. The loss or damage would have been covered by this Coverage Extension had it been in effect when the acts or events causing the loss or damage were committed or occurred.

8. The insurance under Paragraph **7.** above is part of, not in addition to, the Limit of Insurance apply to this Coverage Extension and is limited to the lesser of the amount recoverable under

(1) This Coverage Extension as of its effective date; or

(2) The prior insurance had it remained in effect.

9. With respect to this Coverage Extension, "employee" means:

a. Any natural person:

(1) While in your service or for 30 days after termination of service;

(2) Who you compensate directly by salary, wages or commissions; and

(3) Who you have the right to direct and control while performing services for you:

b. Any natural person who is furnished temporarily to you:

(1) To substitute for a permanent employee as defined in Paragraph **a.** above, who is on leave; or

(2) To meet seasonal or short-term work load conditions:

c. Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.** above;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AH BP 80 13 09 17

**d.** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**e.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But "employee" does not mean:

**a.** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**b.** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

## NEW LOCATIONS COVERAGE

**1.** You may extend the coverage that applies under this Businessowners Plus endorsement to apply to any premises you acquire.

**2.** Insurance under this Coverage Extension for each newly acquired premises will end when any of the following first occurs:

**a.** This policy expires;

**b.** 90 days expire after you acquire or begin construction at the new premises; or

**c.** You report values to us.

This coverage does not apply to locations covered by the Builders Risk Coverage Endorsement.

## FAIRS OR EXHIBITIONS

We will pay up to $15,000 for loss or damage to Business Personal Property while temporarily on display to the public at fairs or exhibitions on premises not described in the Declarations. This Coverage Extension does not apply to your salespersons samples or fine arts.

## FINE ARTS

We will pay up to $25,000 for loss or damage to paintings, etchings, pictures, tapestries, art glass windows and other bona fide works of art of rarity, historical value, or artistic merit, other than fine arts held for sale by you, caused by or resulting from a Covered Cause of Loss.

## FORGERY OR ALTERATION

**1.** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**2.** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**3.** For the purpose of this Coverage Extension, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**4.** The most we will pay for any loss, including legal expenses, under this Coverage Extension is $5,000.

## IDENTITY THEFT

**1.** We will pay up to $50,000 for "Identity Theft Expenses" incurred by an "Identity Theft Insured" as the direct result of any "Identity Theft" commenced during the policy period.

**2.** Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "Identity Theft Insured."

**3.** With respect to the provisions of this Coverage Extension, the following definitions are added.

**a.** "Identity Theft Expenses" means the following:

**(1)** Cost for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies,

**(2)** Cost for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors,

**(3)** Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies and /or legal counsel, or to complete fraud affidavits, up to a maximum payment of $1,000 per week for a maximum period of four weeks,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4)** Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information,

**(5)** Reasonable attorney fees incurred, with our prior consent for:

    **(a)** Defense of lawsuits brought against an "Identity Theft Insured" by merchants, financial institutions or their collection agencies.

    **(b)** The removal of any criminal or civil judgments wrongly entered against an "Identity Theft Insured", and

    **(c)** Challenging the accuracy or completeness of any information in a consumer credit report.

**(6)** Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "Identity Theft".

**b.** "Identity Theft" means:

The act of knowingly transferring or using, without lawful authority, a means of identification of an "Identity Theft Insured" with the intent to commit, any unlawful activity that constitutes a violation of federal law or any applicable state or local law.

**c.** "Identity Theft Insured" means:

**(1)** The Named Insured shown in the Policy Declarations,

**(2)** An individual sole proprietor if you are a sole proprietorship,

**(3)** A partner if you are a partnership, or

**(4)** Any individual having an ownership position of 20% or more of the business if you are a corporation, Limited Liability Company, or other organization.

**4.** We will not pay for:

**a.** "Identity Theft Expenses" incurred due to any fraudulent, dishonest or criminal act by an "Identity Theft Insured" or any person aiding or abetting an "Identity Theft Insured" or by any authorized representative of an "Identity Theft Insured" whether acting alone or in collusion with others.

**b.** "Identity Theft Expenses" incurred due to any fraudulent, dishonest or criminal act by an "Identity Theft Insured" or any person aiding or abetting an "Identity Theft Insured" or by any authorized representative of an "Identity Theft Insured" whether acting alone or in collusion with others.

**5.** The following condition applies in addition to the Common Policy Conditions:

**Duties in the Event of an Identity Theft Expense Loss**

You must provide receipts, bills or other records that support your claim for "Identity Theft Expenses" under Identity Theft Coverage.

When Identity Theft Coverage applies, no other coverage in the policy applies to the "Identity Theft Expenses" insured by this Coverage Extension.

No deductible applies to this Coverage Extension.

## INCREASED COST OF CONSTRUCTION

Paragraph **A.5.l.**, Increased Cost of Construction, of **Section I — Property**, Additional Coverages in the BUSINESSOWNERS COVERAGE FORM is deleted and replaced by the following:

**1.** This Coverage Extension applies only to buildings insured on a replacement cost basis.

**2.** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **3.** through **9.** of this Coverage Extension.

**3.** The ordinance or law referred to in Paragraph **2.** of this Coverage Extension is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**4.** Under this Coverage Extension, we will not pay any costs due to an ordinance or law that:

**a.** You were required to comply with before the loss, even when the building was undamaged; and

**b.** You failed to comply with.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5. Under this Coverage Extension, we will not pay for:

   **a.** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

   **b.** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

6. The most we will pay under this Coverage Extension, for each described building insured under **Section I — Property**, is $25,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $25,000.

7. With respect to this Coverage Extension:

   **a.** We will not pay for the Increased Cost of Construction:

      **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

      **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

   **c.** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

8. This Coverage Extension is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Coverage Extension.

9. The costs addressed in the Loss Payment Property Loss Condition in **Section I — Property** do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Coverage Extension, as stated in Paragraph **6.** of this Coverage Extension, is not subject to such limitation.

## KEY REPLACEMENT/LOCK REPAIR

We will pay for loss or damage, caused by or resulting from a covered theft loss for the cost incurred for:

1. Replacement of keys if they are stolen; or

2. Lock repair.

The most we will pay under this Coverage Extension is $10,000.

## MONEY AND SECURITIES

1. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

   **a.** Theft, meaning any act of stealing;

   **b.** Disappearance; or

   **c.** Destruction.

2. In addition to the Limitations and Exclusions applicable to **Section I — Property**, we will not pay for loss:

   **a.** Resulting from accounting or arithmetical errors or omissions;

   **b.** Due to the giving or surrendering of property in any exchange or purchase; or

   **c.** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

3. The most we will pay for loss in any one occurrence is $25,000.

4. All loss:

   **a.** Caused by one or more persons; or

   **b.** Involving a single act or series of related acts;

   is considered one occurrence.

5. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## MONEY ORDERS AND "COUNTERFEIT MONEY"

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

1. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

2. "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Coverage Extension is $2,500.

## POWER FAILURE

We will pay for direct loss of or damage to Covered Property caused by the interruption of service to the described premises.   The interruption must result from direct physical loss or damage by a covered Cause of Loss to the following property not on the described premises:

1. Utility generating plants

2. Switching stations

3. Substations

4. Transformers; and transmission lines

5. Water mains

6. Communication transmission lines

7. Coaxial cables; and microwave radio relays except satellites.

It does not include overhead communication lines.

The most we will pay for direct loss or damage to Covered Property under this Coverage Extension is $100,000.

## POWER FAILURE BUSINESS INCOME OR EXTRA EXPENSE

We will pay for loss of Business Income or Extra Expense at the insured Premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a covered Cause of Loss to the following property not on the described premises:

1. Utility generating Plants

2. Switching Stations

3. Sub-Stations

4. Transformers and Transmission Lines.

5. Water Mains

6. Communication Transmission Lines

7. Coaxial cables; and Microwave radio relays except satellites.

## OUTDOOR PROPERTY

You may extend the insurance provided by this policy to apply to your radio and television antennas (including satellite dishes), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss:

1. Fire;

2. Lightning;

3. Explosion;

4. Windstorm or Hail, but not including:

   a. Frost or cold weather,

   b. Ice (other than hail), snow or sleet, whether driven by wind or not;

   c. Loss to property inside the building, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

5. Aircraft or Vehicles, meaning only physical contact of an aircraft, a spacecraft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the Covered Property. This cause of loss includes loss or damage by falling objects from aircraft. We will not pay for loss or damage caused by or resulting from vehicles you own or which are operated in the course of your business;

6. Riot or Civil Commotion;

7. Vandalism, meaning willful and malicious damage to, or destruction of Covered Property; or

8. Theft.

The most we will pay for loss or damage under this Coverage Extension is $25,000, but not any more than $5,000 for any one tree, shrub or plant.

## PERSONAL EFFECTS

We will pay for loss or damage to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This Coverage Extension does not apply to:

1. Tools or equipment used in your business; or

2. Loss or damage by theft.

The most we will pay for loss or damage under this Coverage Extension is $5,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AH BP 80 13 09 17

**PERSONAL PROPERTY OFF PREMISES**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Coverage Extension is $15,000.

**POLLUTANT CLEAN UP AND REMOVAL**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Coverage Extension is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy

**SALESPERSON'S SAMPLES**

We will pay up to $10,000 for loss or damage to:

1. Samples of your stock in trade; and
2. Similar property of others;

While such property is in the care, custody or control of your salesperson, sales agents, or yourself while acting as a salesperson and not on the premises you own, lease or operate.

Coverage does not apply to property on display at any fair or exhibition or to fine arts.

**BUILDING PROPERTY OFF PREMISES**

You may extend the insurance that applies to Buildings to cover loss or damage to Covered Property while the Covered Property is removed from the described premises.

The most we will pay under this Coverage Extension is $5,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**POLICY NUMBER:** BBP0012308-00                                      **BUSINESSOWNERS**
                                                                     **AH BP 80 54 09 17**

# NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, **as defined in Section 102(1) of the Act:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Your quote/policy includes the following premium for terrorism coverage:

**Terrorism Premium:**

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED ABOVE AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

BUSINESSOWNERS
AH BP 80 57 09 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION — SUNLAMPS AND TANNING BEDS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph
**B.1. — Exclusions,** in **Section II — Liability:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising from the use of sunlamps or tanning beds.

It is also agreed that the right and duty to defend as afforded by the policy does not apply to any claim or suit against the insured seeking damages resulting from "bodily injury", "property damage" and "personal and advertising injury" arising from the use of sunlamps or tanning beds.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BUSINESSOWNERS
AH BP 80 58 09 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTANTS DEFINITION AMENDMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION I — PROPERTY, H. Property Definitions,
10.** "Pollutants", is replaced by the following:

**10.** "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor soot, fumes, acids, alkalis, radiation or radioactive contamination, dioxins, polychlorinated biphenols, pathogenic or poisonous biological or chemical materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

BUSINESSOWNERS
AH BP 80 66 09 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WELFARE AND PENSION PLAN (ERISA) COMPLIANCE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I — Property**, Paragraph **G. Optional Coverages**, Paragraph **3. Employee Dishonesty** is amended as follows:

**a. Welfare and Pension Plan (ERISA) Compliance**

(1) The "Employee Benefit Plan(s)" shown in the DECLARATIONS are added as insureds under Employee Dishonesty optional coverage.

(2) For each "Employee Benefit Plan(s)" insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Employee Dishonesty that is sufficient to provide a Limit of Insurance for each plan that is at least equal to that required if each Plan were separately insured.

(3) The first Named Insured will act for itself and for every other named insured for all purposes of this coverage. If the first Named Insured ceases to be covered, then the next named insured will become the first Named Insured.

(4) If any insured or partner, member or officer of that insured has knowledge of any information relevant to this coverage, that knowledge is considered knowledge of every named insured.

(5) If the first Named Insured is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that insured for the use and benefit of the Plan(s) sustaining the loss.

(6) If two or more Plans are insured under this policy, any payment we make for loss:

(a) Sustained by two or more plans; or

(b) Of commingled funds or other property of two or more Plans;

that arises out of one occurrence, is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

(7) The deductible provision of the Employee Dishonesty optional coverage does not apply to loss sustained under any "employee benefit plan(s)".

(8) An employee of any insured is considered to be an employee of every insured.

(9) The following is added to the definition of employee:

(a) A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, or any Employee Welfare or Pension Plan (hereafter called Plan) insured under this insurance; and

(b) Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

(10) The following definition is added:

**"Employee Benefit Plan(s)" "included as insured"** means any welfare or pension benefit plan shown in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESSOWNERS ENHANCEMENT FORM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. SECTION I – PROPERTY, A. Coverage, 1. Covered Property,** Paragraphs **a.** and **b.** are replaced by the following:

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,500 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,500 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**B. SECTION I – PROPERTY, A. Coverage, 5. Additional Coverages, f. Business Income, (1) Business Income,** Paragraph **(a)** is replaced by the following:

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

in a vehicle, the described premises include the area within 1,500 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you rent, lease or occupy; and

**(ii)** The area within 1500 feet of the building or within 1500 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**C.** SECTION I – PROPERTY, A. Coverage, 6. Coverage Extensions is revised as follows:

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I — Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,500 feet of the described premises, unless a higher Limit of Insurance is shown in the Declarations.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $500,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

This coverage does not apply to locations covered by the Builders Risk Coverage Endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BUSINESSOWNERS
AH BP 80 84 10 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED — WHEN REQUIRED BY WRITTEN AGREEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **C. Who is an insured** in **Section II — Liability**

**A.** Is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned or rented to you.

**B.** The limits of insurance applicable to the additional Insured are those specified in the Declarations of this Policy or in the written contract, whichever is lower. These limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**C.** Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether that insurance is primary, excess, contingent or on any other basis, unless you and the additional insured have specifically agreed in a written contract or written agreement that this insurance be primary.

When coverage is provided on a primary basis we will not seek contribution from any other insurance available to the additional insured if a written contract or written agreement requires that this insurance be noncontributory.

**D.** All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BUSINESSOWNERS**
**AH BP 81 86 09 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion applies to **SECTION II – LIABILITY** and supersedes any provision to the contrary:

**Asbestos**

This insurance does not apply to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

(a) The inhaling of, ingesting or physical exposure to asbestos, asbestos fibers or goods or products containing asbestos or asbestos fibers;

(b) The use of asbestos or asbestos fibers in constructing or manufacturing any good, product, building or structure;

(c) The removal or abatement of asbestos or asbestos fibers from any good, product, building or structure;

(d) The manufacture, sale, transportation, storage or disposal of asbestos or goods, or products containing asbestos or asbestos fibers;

(e) The presence of asbestos or asbestos fibers in any good, product, building or structure;

(f) The release of asbestos or asbestos fibers from or at any good, product, building or structure;

(g) Damage to, loss of use of, or reduction in the value of a building or any property due to the actual or alleged presence of asbestos or asbestos fibers;

(h) The encapsulation or containment of asbestos or asbestos fibers within a building;

(i) The providing of or failing to provide warnings or instructions concerning asbestos or asbestos fibers; or

(j) Warranties or representations made at any time with respect to or concerning asbestos or asbestos fibers.

(2) Any loss, cost or expense arising out of:

(a) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way  respond to, or assess the effects of asbestos or asbestos fibers; or

(b) Any claim or suit by or on behalf of a governmental authority or any other party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos or asbestos fibers.

(3) Payment for the investigation or defense of any loss, injury or damage, any cost, fine, penalty or for any expense or claim or suit resulting from, arising out of or related to Paragraphs **(1)** and **(2)** above.

All other terms and conditions of this policy remain unchanged.

**AH BP 81 86 09 17**        Includes copyrighted material of Insurance Services Office, Inc.        **Page 1 of 1**        ☐
with its permission.

**BUSINESSOWNERS**
**AH BP 81 83 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**I.** We will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

    **(1) Nuclear Hazard** – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

    **(2) Biological Hazard** – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

    **(3) Chemical Hazard** – including, but not limited to, any chemical agent, material, product or substance;

    **(4) Radioactive Hazard** – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

**II.** The provisions of subparagraphs **I. (2)** and **I. (3)** will not apply where the agent, material, product or substance at issue is utilized in the course of business by an insured.

**III.** Only if and to the extent required by state law, the following exception to the exclusion in paragraph **I.** applies:

    If a hazard excluded under paragraph **I.** results in fire, we will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. This coverage does not apply to insurance provided under Business Income, Rental Value or Extra Expense coverage forms or endorsements that apply to those coverage forms.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE — WASHINGTON
## (Including Electronic Circuitry Impairment)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following is added to Paragraph **A.3. Covered Causes of Loss in Section I – Property**:

**Additional Coverage – Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below. Without an "accident" or "electronic circuitry impairment", there is no Equipment Breakdown Coverage.

**1.** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**2.** Unless otherwise shown in a "schedule", the following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However, with respect to coverage **2.g.** Service Interruption below and any Dependent Properties coverage provided by this policy, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**a. Business Income and Extra Expense**

**(1)** Any insurance provided under the policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a "schedule", then with respect to this endorsement only, the "period of restoration" will begin immediately after the "accident" or "electronic circuitry impairment", and the deductible shown in the "schedule" will apply.

**(2)** The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a "schedule".

**b. Data Restoration**

**(1)** We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data".

**(2)** The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur is $50,000 unless otherwise shown in a "schedule".

**c. Expediting Expenses**

**(1)** With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

**(a)** Make temporary repairs; and

**(b)** Expedite permanent repairs or permanent replacement.

**(2)** The most we will pay for loss or expense under this coverage is $50,000 unless otherwise shown in a "schedule".

**d. Hazardous Substances**

**(1)** We will pay your additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

**(2)** This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.h.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

**(3)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur is $50,000 unless otherwise shown in a "schedule".

**e.  Off Premises Equipment Breakdown**

**(1)** We will pay for physical damage to transportable "covered equipment" that, at the time of the "accident" or "electronic circuitry impairment", is not at a covered location. As respects this Off Premises Equipment Breakdown coverage only, the "accident" or "electronic circuitry impairment" may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.

**(2)** We will also pay for your reasonable and necessary cost to research, replace and restore lost "electronic data" contained within "covered equipment" as described under **(1)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

**(3)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur and Data Restoration as described in **(2)** above is $10,000 unless otherwise shown in a "schedule".

**f.  Public Relations**

**(1)** This coverage only applies if you have sustained an actual loss of Business Income covered under this endorsement.

**(2)** We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

**(a)** The media;

**(b)** The public; or

**(c)** Your customers, clients or members.

**(3)** Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

**(4)** The most we will pay for loss or expense under this coverage is $5,000.

**g.  Service Interruption**

**(1)** Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(2)** "Cloud computing services" must be provided by a professional provider with whom you have a contract.

**(3)** With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "electronic data" stored in the equipment of a provider of "cloud computing services".

**(4)** Unless otherwise shown in a "schedule", any insurance provided for Business Income or Data Restoration will not apply under this Service Interruption coverage unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of the disruption, and the applicable deductible will apply.

**(5)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense, Data Restoration or Spoilage, except that if a limit is shown in a "schedule" for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**h. Spoilage**

**(1)** We will pay for:

**(a)** Physical damage to "perishable goods" due to spoilage;

**(b)** Physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

**(c)** Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(2)** If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

**(3)** The most we will pay for loss, damage or expense under this coverage is $50,000 unless otherwise shown in a "schedule".

**B.** The following is added to Paragraph **B. Exclusions**:

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this endorsement.

**1.** The following exclusions are modified:

**a.** As respects this endorsement only, the next to the last paragraph in Exclusion **B.1.h.** is deleted and replaced with the following:

However, if excluded loss or damage, as described in Paragraph **(1)** above results in an "accident" or "electronic circuitry impairment", we will pay only for the loss, damage or expense caused by such "accident" or "electronic circuitry impairment".

**b.** As respects this endorsement only, the last paragraph of Exclusion **B.2.l.** is deleted and replaced with the following:

But if an excluded cause of loss that is listed in **2.l.(1)** through **(7)** results in an "accident" or "electronic circuitry impairment", we will pay for the loss, damage or expense caused by that "accident" or "electronic circuitry impairment".

**c.** The following is added to Exclusions **B.2.m.** and **B.2.n.**:

We will also pay for direct physical loss or damage caused by an "accident" or "electronic circuitry impairment".

**2.** The following exclusions are added:

**a.** We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment":

**(1)** Fire, including smoke from a fire;

**(2)** Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

**(3)** Any other explosion, except as specifically covered under this endorsement;

**(4)** Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action;

(5) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies; or

(6) Vandalism.

**b.** Coverage under this endorsement does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

(1) Lightning;

(2) Windstorm or hail. However this exclusion does not apply when:

    (a) "Covered equipment" located within a building or structure suffers an "accident" or "electronic circuitry impairment" that results from wind-blown rain, snow, sand or dust; and

    (b) The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

(3) Smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

(4) Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

(5) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

(6) Water or other means used to extinguish a fire.

**c.** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.

**d.** We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any "fungi",

wet rot or dry rot, including any presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such "fungi", wet rot or dry rot. However, this exclusion does not apply to spoilage of personal property that is "perishable goods", to the extent that such spoilage is covered under Spoilage coverage.

**e.** We will not pay for any loss or damage to animals.

**f.** Exclusions **2.b.(1)**, **2.b.(2)**, **2.b.(3)** and **2.b.(4)** above shall not apply if:

(1) The excluded cause of loss occurs away from any covered location and causes an electrical surge or other electrical disturbance;

(2) Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

(3) The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**C. DEDUCTIBLES**

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a "schedule". If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. Deductibles** is deleted and replaced with the following:

**1. Deductibles for Each Coverage**

**a.** Unless the "schedule" indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one equipment breakdown".

**b.** We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the "schedule". We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

**c.** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one equipment breakdown", only the highest deductible for each coverage will apply.

© 2015
Includes copyrighted material of ISO Properties, Inc., with its permission

**2. Direct and Indirect Coverages**

    **a.** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the "schedule".

    **b.** Unless more specifically indicated in the "schedule":

        **(1)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

        **(2)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**3. Application of Deductibles**

    **a. Dollar Deductibles**

    We will not pay for loss, damage or expense resulting from any "one equipment breakdown" until the amount of loss, damage or expense exceeds the applicable deductible shown in the "schedule". We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, up to the applicable Limit of Insurance.

    **b. Time Deductible**

    If a time deductible is shown in the "schedule", we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident" or "electronic circuitry impairment". If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    **c. Multiple of Average Daily Value (ADV)**

    If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

    The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" or "electronic circuitry impairment" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or "electronic circuitry impairment" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations.

For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration". The number indicated in the "schedule" will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    **d. Percentage of Loss Deductibles**

    If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**D. CONDITIONS**

    **1.** The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

        **a. Suspension**

        Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

        **(1)** Your last known address; or

        **(2)** The address where the "covered equipment" is located.

        Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

        **b. Jurisdictional Inspections**

        If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

    **2.** As respects this endorsement only, Loss Payment Condition **5.d.** in the Businessowners Coverage Form is deleted and replaced with the following:

**d.** We will determine the value of Covered Property as follows:

**(1)** Except as specified otherwise, our payment for damaged Covered Property will be the smallest of:

**(a)** The cost to repair the damaged property;

**(b)** The cost to replace the damaged property on the same site; or

**(c)** The amount you actually spend that is necessary to repair or replace the damaged property.

**(2)** The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

**(3)** Except as described in **(4)** below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

**(4)** Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**(5)** The following property will be valued on an Actual Cash Value basis:

**(a)** Any property that does not currently serve a useful or necessary function for you;

**(b)** Any Covered Property that you do not repair or replace within 24 months after the date of the "accident" or "electronic circuitry impairment"; and

**(c)** Any Covered Property for which Actual Cash Value coverage is specified in a "schedule".

Actual Cash Value includes deductions for depreciation.

**(6)** If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

**(a)** The property was manufactured by you;

**(b)** The sales price of the property is less than the replacement cost of the property; or

**(c)** You are unable to replace the property before its anticipated sale.

**(7)** Except as specifically provided for under Data Restoration coverage, "electronic data" and "media" will be valued on the following basis:

**(a)** For mass-produced and commercially available software, at the replacement cost.

**(b)** For all other "electronic data" and "media", at the cost of blank "media" for reproducing the records. We will not pay for "electronic data" representing financial records based on the face value of such records.

**3. Coinsurance**

If a coinsurance percentage is shown in a "schedule" for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**E. DEFINITIONS**

The following definitions are added with respect to this endorsement only:

1. "Accident"

   a. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

      (1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

      (2) Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

      (3) Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

      (4) Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

      (5) Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

   b. None of the following is an "accident":

      (1) Defect, programming error, programming limitation, computer virus, malicious code, loss of "electronic data", loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" or "media" of any kind; or

      (2) Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

      However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

2. "Boilers and vessels" means:

   a. Any boiler, including attached steam, condensate and feedwater piping; and

   b. Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

   This term does not appear elsewhere in this endorsement, but may appear in a "schedule".

3. "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), SaaS (software as a service) and NaaS (network as a service). This includes business models known as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

4. "Covered equipment"

   a. "Covered equipment" means, unless otherwise specified in a "schedule", Covered Property:

      (1) That generates, transmits or utilizes energy; or

      (2) Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

      "Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

   b. None of the following is "covered equipment":

      (1) Structure, foundation, cabinet or compartment;

      (2) Insulating or refractory material;

      (3) Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

      (4) Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

      (5) "Vehicle" or any equipment mounted on a "vehicle";

      (6) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

      (7) Dragline, excavation or construction equipment; or

      (8) Equipment manufactured by you for sale.

5. "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

6. "Electronic circuitry impairment"

    **a.** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **b.**, **c.** and **d.** below.

    **b.** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment".

    **c.** The "covered equipment" must be owned or leased by you, or operated under your control.

    **d.** None of the following is an "electronic circuitry impairment":

       **(1)** Any condition that can be reasonably remedied by:

          **(a)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

          **(b)** Rebooting, reloading or updating software or firmware; or

          **(c)** Providing necessary power or supply.

       **(2)** Any condition caused by or related to:

          **(a)** Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

          **(b)** Insufficient size, capability or capacity of the "covered equipment".

       **(3)** Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

7. "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

8. "Media" means material on which "electronic data" is recorded, such as solid state drives, hard disks, optical disks, flash drives, magnetic tapes or floppy disks.

9. "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments", all will be considered "one equipment breakdown". All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown".

10. "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

11. "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

    This term does not appear elsewhere in this endorsement, but may appear in a "schedule".

12. "Schedule" means the Equipment Breakdown Coverage Schedule.

13. "Vehicle" means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle".

The most we will pay for loss, damage or expense under this endorsement arising from any "one equipment breakdown" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a "schedule". Coverage provided under this endorsement does not provide an additional amount of insurance.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
INFORMATION SECURITY PROTECTION ENDORSEMENT

**A. Section I – Property** is amended as follows:

    **1.** Paragraphs **a.** and **h.** under **A.2. Property Not Covered** are replaced by the following:

        **a.** Aircraft, automobiles or motortrucks; and any other vehicle if such vehicle is subject to licensing requirements;

        **h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to licensing requirements. This paragraph does not apply to "computer(s)" while held as "stock".

    **2.** In the sections titled **Covered Causes Of Loss** or **Exclusions,** any introductory paragraph preceding an exclusion or list of exclusions is replaced by the following paragraph, which pertains to application of those exclusions:

        We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

        **a.** Directly and solely results in loss or damage; or

        **b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

    **3.** Paragraph **B.1.b. Earth Movement** Exclusion is replaced by the following:

        **b. Earth Movement**

        **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

        **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

        **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

        **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

      But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

        **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

          **(a)** Volcanic Action means direct loss or damage resulting from the eruption of a volcano when loss or damage is caused by:

             **(i)** Volcanic blast or airborne shock waves; or

             **(ii)** Ash, dust or particulate matter.

            With respect to coverage for volcanic action as set forth in **(5)(a)(i)** and **(5)(a)(ii),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

            Volcanic Action does not provide coverage for damage to:

              **i.** Land;

              **ii.** Property in the open or in open sheds; or

 © Insurance Services Office, Inc., 2014

**iii.** Portions of buildings not completely enclosed, or personal property contained within those buildings.

**(b)** Direct loss includes the cost to:

**(i)** Remove the ash, dust or particulate matter from the interior and exterior surfaces of the covered building; and

**(ii)** Clean equipment and stock. If stock cannot be returned to its state before the volcanic eruption, the measure of loss will be the reduction in actual cash value.

Payment for removal applies only to the initial deposit of ash, dust or particulate matter following a volcanic eruption. Subsequent deposits arising from the movements of volcanic dust or ash by wind or other means are not covered.

The following applies to the **Business Income** and **Extra Expense** Additional Coverages only:

The "period of restoration" arising from the need for removal is the time necessary to remove the matter described with reasonable speed from the Covered Property.

**(c)** Volcanic Action does not include loss caused by, resulting from, contributed to or aggravated by:

**(i)** Fire;

**(ii)** Explosion;

**(iii)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge); or

**(iv)** Earth movement, including but not limited to earthquake, volcanic eruption, landslide, mine subsidence, lava flow, mudflow, earth sinking, earth rising or shifting.

This exclusion applies if any of the above, in Paragraphs **(1)** through **(5)**:

**(a)** Occurs independently;

**(b)** Is caused by an act of nature; or

**(c)** Is caused by an act or omission of humans or animals.

**4.** Paragraph **B.1.g. Water** Exclusion is replaced by the following:

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies if any of the above, in Paragraphs **(1)** through **(5):**

**(i)** Occurs independently;

**(ii)** Is caused by an act of nature;

**(iii)** Is caused by an act or omission of humans or animals; or

**(iv)** Is attributable to the failure, in whole or in part, of a dam, levee, seawall or other boundary or containment system.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**5.** Paragraph **B.2.l. Other Types Of Loss** Exclusion is replaced by the following:

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

© Insurance Services Office, Inc., 2014

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to breakdown of "computers"; or

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **(1)** through **(7)** results in a "specified cause of loss", or building glass breakage or collapse, as provided in the Additional Coverage, Collapse results, we will pay for the loss or damage caused by that "specified cause of loss", building glass breakage or collapse.

**6.** Paragraph **3.** under **B. Exclusions** is replaced by the following:

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **a.** through **c.** But if an excluded cause of loss that is listed in **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

**(1)** A weather condition which results in:

**(a)** Landslide, mudslide or mudflow;

**(b)** Mine subsidence; earth sinking, rising or shifting (other than sinkhole collapse);

**(c)** Water, as described in Paragraphs **A.4.g.(1)** through **A.4.g.(5)** of this Endorsement;

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**(2)** A weather condition which results in the failure of power communication, water or other utility service supplied to the described premises, if the failure:

**(a)** Originates away from the described premises; or

**(b)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**7.** Paragraph **E. Property Loss Conditions** is amended as follows:

**a.** The last paragraph of Paragraph **2. Appraisal** does not apply.

**b.** Paragraph **(1)** under **3.a. Duties In The Event Of Loss Or Damage,** regarding notifying the police if a law may have been broken, does not apply.

**c.** Paragraph **4. Legal Action Against Us** is replaced by the following:

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

If this action is brought pursuant to Sec. 3 of RCW 48.30 then 20 days prior to filing such an action, you are required to provide written notice of the basis for the cause of action to us and the Office of the Insurance Commissioner. Such notice may be sent by regular mail, registered mail or certified mail with return receipt requested.

**d.** Paragraphs **d.(1)(a)(ii)** and **d.(1)(a)(iii)** under **5. Loss Payment** are replaced by the following:

**(ii)** The amount it would cost to replace the damaged item at the time of the loss with new property of similar kind and quality to be used for the same purpose on the same site; or

**(iii)** The amount you actually spend in repairing the damage, or replacing the damaged property with new property of similar kind and quality.

**e.** Subparagraph **d.(5)** under **5. Loss Payment** is replaced by the following:

**(5)** Tenants' improvements and betterments at:

**(a)** Replacement cost if you make repairs within a reasonable time after loss;

**(b)** A proportion of your original cost if you do not make repairs within a reasonable time after loss. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**8.** Paragraph **F.2. Mortgageholders** Property General Condition is replaced by the following:

**2. Mortgageholders**

Insurance Commissioner's Regulation No. 335/WAC284-21-010 requires that Form **372 (Ed. 11-50)** or Form **438 BFU (Ed. 5-42)** be endorsed on this Policy to replace the Mortgageholders Property General Condition.

**9.** The following is added to **Section I – Property:**

**a.** The term actual cash value means:

**(1)** When the damage to property is economically repairable, actual cash value means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

**(2)** When the loss or damage to property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

**(3)** Otherwise, actual cash value means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

**b.** The word "vehicles", as used in Section **I –** Property, means vehicles running on land or tracks, but not aircraft.

**B. Section II – Liability** is amended as follows:

**1.** Paragraph **B.1.e. Employer's Liability** Exclusion applies only to "bodily injury" to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **B.1.e. Employer's Liability** is replaced by the following:

**e. Employer's Liability**

(1) "Bodily injury" to an "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business.

(2) Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**2.** Paragraph **2.a.(1)** under **C. Who Is An Insured** applies only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **C.2.a.(1)** is replaced by the following:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business; or

(b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a).**

**C. Section III – Common Policy Conditions** is amended as follows:

**1.** Paragraph **A. Cancellation** is replaced by the following:

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this Policy by notifying us or the insurance producer in one of the following ways:

a. Written notice by mail, fax or e-mail;

b. Surrender of the Policy or binder; or

c. Verbal notice.

Upon receipt of such notice, we will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

a. The date on which notice is received or the Policy or binder is surrendered; or

b. The date of cancellation requested by the first Named Insured.

**2.** We may cancel this Policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least:

a. Five days before the effective date of cancellation for any structure where two or more of the following conditions exist:

(1) Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days, unless the structure is maintained for seasonal occupancy or is under construction or repair;

(2) Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

(3) Because of its physical condition, the structure is in danger of collapse;

(4) Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

(5) Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

(6) Without reasonable explanation, heat, water, sewer and electricity are not furnished for the structure for 60 consecutive days; or

(7) The structure is not maintained in substantial compliance with fire, safety and building codes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice stating the actual reason for cancellation to the first Named Insured and the first Named Insured's agent or broker at their last mailing addresses known to us.

**4.** We will also mail or deliver to any mortgageholder, pledgee or other person shown in this Policy to have an interest in any loss which may occur under this Policy, at their last mailing address known to us, written notice of cancellation prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.2.a.** above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph **A.2.a.** above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** Paragraph **1.** under **H. Other Insurance** is replaced by the following:

**1.** With respect to insurance provided under Section **I** – Property:

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same loss or damage, other than that described in **a.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**3.** Paragraph **3.** under **I. Premiums** is replaced by the following:

**3.** The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this Policy will expire on the first anniversary date that we have not received the premium.

**4.** The following paragraph is added:

**M. Nonrenewal**

We may elect not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgageholder, pledgee or other person shown in this Policy to have an interest in any loss which may occur under this Policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

**a.** Expiration of the Policy; or

**b.** Anniversary date of this Policy if this Policy has been written for a term of more than one year.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2014

Otherwise, we will renew this Policy unless:

**a.** The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

**b.** Other coverage acceptable to the insured has been procured prior to the expiration date of the Policy; or

**c.** The Policy clearly states that it is not renewable and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

**D.** The following changes apply only to Information Security Protection Endorsement **BP 15 07** if it is attached to this Policy:

**1.** Paragraph **(2)** of Insuring Agreement **d. Security Breach Liability** is replaced by the following:

**(2)** We will pay for "defense expenses" as a result of a "claim" in the form of a "regulatory proceeding" first made against the insured during the "policy period" or during the applicable Extended Reporting Period, in response to a "wrongful act" or a series of "interrelated wrongful acts" covered under Paragraph **d.(1).**

**2.** Paragraph **d.** of the definition of "loss" in Paragraph **V.** is replaced by the following:

**d.** With respect to Insuring Agreements **d.** Security Breach Liability and **g.** Web Site Publishing Liability:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

"Loss" does not include:

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Punitive or exemplary damages;

**(3)** The multiplied portion of multiplied damages;

**(4)** Taxes;

**(5)** Royalties;

**(6)** The amount of any disgorged profits; or

**(7)** Matters that are uninsurable pursuant to law.

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 04 10 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS OR OTHER INTERESTS FROM WHOM LAND HAS BEEN LEASED

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name Of Person Or Organization: |
| --- |
| Maverick Holding LLC<br>PO Box 307<br>Brewster WA 98812 |

| Designation Of Premises (Part Leased To You): |
| --- |
| |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**Section II – Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

**3.** The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Schedule.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** Any "occurrence" that takes place after you cease to lease that land; or

**2.** Structural alterations, new construction or demolition operations performed by or for the person(s) or organization(s) shown in the Schedule.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.

**BP 04 10 07 13**            © Insurance Services Office, Inc., 2012            **Page 1  of 1**

BUSINESSOWNERS
BP 04 37 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **Section II** – **Liability** and supersedes any provision to the contrary:

The insurance provided under Paragraph **A. Coverages** does not apply to "personal and advertising injury".

**BUSINESSOWNERS**
**BP 04 39 07 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following applies to Section **II** – Liability and supersedes any provision to the contrary:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(a)** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**(b)** The negligent:

**(i)** Employment;

**(ii)** Investigation;

**(iii)** Supervision;

**(iv)** Reporting to the proper authorities, or failure to so report; or

**(v)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **(a)** above.

BUSINESSOWNERS
BP 04 41 07 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME CHANGES – TIME PERIOD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section I – Property** is amended as follows:

**A.** Paragraph **A.5.i. Civil Authority** Additional Coverage is amended by deleting the second and third paragraphs and replacing them with the following:

> This coverage will apply for a period of up to four consecutive weeks from the date of that action.

**B.** Paragraph **(a)** under Paragraph **A.5.m.(6) Business Income From Dependent Properties** Additional Coverage is replaced by the following:

> **(a)** Begins immediately after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises of the dependent property or secondary dependent property; and

**C.** Paragraph **H.9.a.(1)(a)** of the "period of restoration" definition is replaced by the following:

> **(a)** Immediately after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; or

© Insurance Services Office, Inc., 2012

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 04 56 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Utility Services Limit Of Insurance | Water Supply Property ("X" If Applies) | Communication Supply Property | Power Supply Property |
|---|---|---|---|---|---|
| | | | | Overhead Transmission Lines Enter Either "Included" Or "Not Included" (If Applicable) | |
| 001 | 001 | Personal Property: $10,000 | | | X Included |
| **Covered Property:** Personal Property | | | | | |
| | | | | | |
| **Covered Property:** | | | | | |
| | | | | | |
| **Covered Property:** | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The coverage provided by this endorsement is subject to the provisions of Section **I** – Property, including Paragraph **D.** Deductibles, except as provided below.

**A.** The following is added to Paragraph **A. Coverage:**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **C.** of this endorsement if such property is indicated by an "X" in the Schedule.

**B. Exception**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**C. Utility Services**

1. Water Supply Property, meaning the following types of property supplying water to the described premises:

    **a.** Pumping stations; and

    **b.** Water mains.

2. Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated in the Schedule.

3. Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

   It does not include overhead transmission lines unless indicated in the Schedule.

D. As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

E. Paragraph **C. Limits Of Insurance** is replaced by the following:

   **C. Limits Of Insurance**

   If a Utility Services Limit Of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit Of Insurance stated in the Declarations as applicable to the Covered Property.

   If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit Of Insurance on the Covered Property as shown in the Declarations. But this Utility Services endorsement does not increase the applicable Limit of Insurance.

    © Insurance Services Office, Inc., 2012    **BP 04 56 07 13**

BUSINESSOWNERS
BP 04 60 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(i)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(ii)** Whether the insured may be liable as an employer or in any other capacity; and

**(iii)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs **(1)(a)** and **(2)** of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

© Insurance Services Office, Inc., 2009

BUSINESSOWNERS
BP 04 73 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES – DOMESTIC ABUSE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions** in **Section I – Property:**

**1.** We will not pay for loss or damage arising out of any act committed or conspired to be committed by or at the direction of an insured with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion or any other policy provision (including Paragraph **C. Concealment, Misrepresentation Or Fraud** in **Section III – Common Policy Conditions**) will not apply to deny an insured's claim for an otherwise covered property loss if such loss is caused by an act of "domestic abuse" by another insured under the policy, and the insured making claim:

**a.** Files a police report and cooperates with any law enforcement investigation relating to the act of "domestic abuse"; and

**b.** Did not cooperate in or contribute to the creation of the loss.

**3.** If we pay a claim pursuant to Paragraph **A.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.** The following is added to Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III – Common Policy Conditions:**

If we pay an insured, who is a victim of "domestic abuse", for a loss caused by an act of "domestic abuse", the rights of that insured to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That insured may not waive such rights to recover against the perpetrator of the "domestic abuse".

**C.** As used in this endorsement, "domestic abuse" means:

**1.** Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members;

**2.** Sexual assault of one family or household member by another;

**3.** Stalking, as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

**4.** Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

BUSINESSOWNERS
BP 04 83 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REMOVAL OF INSURANCE-TO-VALUE PROVISION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **E.5.d. Loss Payment** Property Loss Condition in **Section I – Property** is amended as follows:

**A.** Paragraph **d.(1)(a)** is replaced by the following:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section **I** – Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**B.** Paragraph **d.(1)(b)** does not apply.

© Insurance Services Office, Inc., 2009

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

BUSINESSOWNERS
BP 05 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in **Section II – Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

**1.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**2.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**3.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**4.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II – Liability:**

**1.** "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

BUSINESSOWNERS
BP 05 23 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED
# ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

BUSINESSOWNERS
BP 05 38 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

          © Insurance Services Office, Inc., 2015          BP 05 38 01 15

**BUSINESSOWNERS**
**BP 05 42 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**BP 05 42 01 15**  © Insurance Services Office, Inc., 2015  **Page 1 of 1**

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 05 64 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2.**) applies to property located in the following state(s): |
| WA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section I – Property** and **Section II – Liability** are amended as follows:

  **1. Applicability Of The Provisions Of This Endorsement**

    **a.** The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

      **(1)** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form; or

      **(2)** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

        **(a)** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

        **(b)** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

**(c) Redefine** terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

**b. If the provisions of this endorsement become applicable, such provisions:**

**(1) Supersede** any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or injury or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

**(2) Remain applicable** unless we notify you of changes in these provisions, in response to federal law.

**c. If the provisions of this endorsement do NOT become applicable,** any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**2.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**B. Section I – Property** is amended as follows:

**1.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

    © Insurance Services Office, Inc., 2015    BP 05 64 01 15

With respect to this Item **1.e.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**2. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverages or endorsements that apply to those coverages.

**3. Application Of Other Exclusions**

When the Exclusion Of Terrorism applies in accordance with the terms of Paragraph **1.a.** or **1.b.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form.

**C. Section II – Liability** is amended as follows:

**1.** The following definition is added and applies under this endorsement wherever the phrase any injury or damage, is enclosed in quotation marks:

"Any injury or damage" means any injury or damage covered under this Coverage Form or any applicable endorsement, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury", as may be defined under this Coverage Form or any applicable endorsement.

**2.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**f.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **2.e.** or **2.f.** are exceeded.

With respect to this Exclusion, Paragraphs **2.e.** and **2.f.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**D.** The following provision is added to **Section I – Property** and **Section II – Liability:**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

© Insurance Services Office, Inc., 2015

**BUSINESSOWNERS**
**BP 06 12 11 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following applies to any provision in this Policy, or in any endorsement attached to this Policy, that sets forth a duty to defend:

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

© Insurance Services Office, Inc., 2013

BUSINESSOWNERS
BP 06 69 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON – FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II – Liability:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**

    **t. Fungi Or Bacteria**

        **(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents.

        **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions:**

    **1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

 © ISO Properties, Inc., 2005    ☐

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 06 74 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WASHINGTON – STOP GAP – EMPLOYER'S LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Bodily Injury By Accident | Bodily Injury By Disease | |
|---|---|---|
| Each Accident | Each Employee | Aggregate |
| $500,000 | $500,000 | $1,000,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**Section II – Liability** is amended as follows:

**A. Coverage – Stop Gap – Employer's Liability**

   **1. Insuring Agreement**

     **a.** We will pay those sums that the insured becomes legally obligated by Washington law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this coverage.

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

     **b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

      **(1)** The:

       **(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

       **(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

       **(c)** "Employee", at the time of the injury, was covered under a workers' compensation policy and subject to a "workers' compensation law" of Washington; and

      **(2)** The:

       **(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

       **(b)** "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

**BP 06 74 07 13**          © Insurance Services Office, Inc., 2012          **Page 1  of  4**

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(1)** For:

**(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

**(b)** Care and loss of services; and

**(c)** Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

**(2)** Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**2. Exclusions Applicable To Stop Gap – Employer's Liability Coverage**

This insurance does not apply to:

**a. Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it is reasonable to believe that an injury is substantially certain to occur.

**b. Fines Or Penalties**

Any assessment, penalty or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With Workers' Compensation Law**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers' compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Sections 51-60);

**(2)** The Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Sections 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers' compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Coverage Extension – Supplementary Payments** provisions apply to **Stop Gap – Employer's Liability Coverage** as well as to **Business Liability Coverage.**

**C.** For the purposes of this endorsement, Paragraph **C. Who Is An Insured** is replaced by the following:

**C. Who Is An Insured**

If you are designated in the Declarations as:

**1.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**2.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**3.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**4.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**5.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits Of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

**3.** The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

**4.** Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.** For the purposes of this endorsement, Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** of the **Liability And Medical Expenses General Conditions** is replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

  **a.** You must see to it that we or our agent is notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

    **(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**F.** For the purposes of this endorsement, Paragraph **4.** of the **Liability And Medical Expenses Definitions** section is replaced by the following:

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

  **c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

  provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**G.** The following are added to the **Liability And Medical Expenses Definitions** section:

**1.** "Workers' compensation law" means the Workers' Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing nonoccupational disability benefits.

**2.** "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

**3.** "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**H.** For the purposes of this endorsement, the definition of "bodily injury" does not apply.

© Insurance Services Office, Inc., 2012

**BP 06 74 07 13**

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 12 06 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number: | 001 | Building Number: | 001 | Applicable Clause (Indicate Paragraph A, B or C): | A |
|---|---|---|---|---|---|
| **Description Of Property:** Business Personal Property ||||||
| **Loss Payee Name:** North Cascades Bank Division of Glacier Bank ||||||
| **Loss Payee Address:** 220 Johnson Ave Box 1648 Chelan, WA 98816 ||||||
| **Premises Number:** | | **Building Number:** | | **Applicable Clause (Indicate Paragraph A, B or C):** | |
| **Description Of Property:** ||||||
| **Loss Payee Name:** ||||||
| **Loss Payee Address:** ||||||
| **Premises Number:** | | **Building Number:** | | **Applicable Clause (Indicate Paragraph A, B or C):** | |
| **Description Of Property:** ||||||
| **Loss Payee Name:** ||||||
| **Loss Payee Address:** ||||||
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||||||

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered

The following is added to Paragraph **E.5. Loss Payment** Property Loss Condition in **Section I - Property,** as shown in the Declarations or in the Schedule:

### A. Loss Payable Clause

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

### B. Contract Of Sale Clause

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

### C. Building Owner Loss Payable Clause

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009
**BP 12 06 01 10**

POLICY NUMBER: BBP0012308-00

**BUSINESSOWNERS**
**BP 14 53 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON – WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number Location / Building | Limit Of Insurance |
|---|---|
| 001 / 001 | $                          20,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section **I** – Property, caused by or resulting from:

**1.** Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

**2.** Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **A.2.**, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

**B.** The coverage described in Paragraph **A.** of this endorsement does not apply to loss or damage resulting from:

**1.** An insured's failure to keep a sump pump or its related equipment in proper working condition;

**2.** An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

**3.** Sump pump failure which is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**C.** The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit Of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

© Insurance Services Office, Inc., 2012

**D.** The following provisions apply to **Section I – Property** and supersede any provisions to the contrary:

The most we will pay under:

**1.** Paragraph **A.5.f.** Business Income Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

**2.** Paragraph **A.5.g.** Extra Expense Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit Of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

**E.** With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I – Property** is replaced by the following:

**Water**

**1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** Mudslide or mudflow;

**3.** Water under the ground surface pressing on, or flowing or seeping through:

**a.** Foundations, walls, floors or paved surfaces;

**b.** Basements, whether paved or not; or

**c.** Doors, windows or other openings; or

**4.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies if any of the above, in Paragraphs **1.** through **4.:**

**a.** Occurs independently;

**b.** Is caused by an act of nature;

**c.** Is caused by an act or omission of humans or animals; or

**d.** Is attributable to the failure, in whole or in part, of a dam, levee, seawall or other boundary or containment system.

But if any of the above, in Paragraphs **1.** through **4.,** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**F.** For the purposes of this endorsement, the term drain includes a roof drain and related fixtures.

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

POLICY NUMBER: BBP0012308-00                **BUSINESSOWNERS**
                                                         **BP 15 11 12 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| ☐ | **Bodily Injury And Property Damage:**<br>Paragraph **A.** in this endorsement does not apply if an "X" is shown in the box. |
| ☐ | **Personal And Advertising Injury:**<br>Paragraph **B.** in this endorsement does not apply if an "X" is shown in the box. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Liability** is amended as follows:

**A.** Exclusion **B.1.g.** is replaced by the following:

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 51 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(ii)** The operation of any of the following machinery or equipment:

**i.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**ii.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**B.** The following is added to Exclusion **B.1.p. Personal And Advertising Injury:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**(1)** The use of another's advertising idea in your "advertisement"; or

**(2)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions:**

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

© Insurance Services Office, Inc., 2016
BP 15 11 12 16

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**POLICY NUMBER:** BBP0012308-00    **AH QBCU-9000 (10 18)**
**Issuing Company:** General Casualty Company
of Wisconsin

**Named Insured:** Valor Law Group,
PS
Thomason Law &
Justice PS

 **QBE**

# NOTICE TO POLICYHOLDERS – FRAUD WARNINGS

### Fraud Warnings

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Notice to Alaska residents:** "A person who knowingly and with intent to injure, defraud, or deceive an insurance company, files a claim containing false, incomplete, or misleading information may be prosecuted under state law."

**Notice to Arizona residents:** "For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties."

**Notice to California residents:** "For your protection California law requires the following to appear on this form. Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison."

**Notice to Colorado residents:** "It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies."

**Notice to District of Columbia residents:** "WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Notice to Delaware residents:** "Any person who knowingly, and with intent to injure, defraud, or deceive any insurer, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony."

**Notice to Florida residents:** "Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree."

**Notice to Idaho residents:** "Any person who knowingly and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony."

**Notice to Indiana residents:** "A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony."

**Notice to Kansas residents:** "A 'fraudulent insurance act' means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto."

**Notice to Kentucky residents:** "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime

**Notice to Maryland residents:** "Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

**Notice to Maine residents:** "It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company.  Penalties may include imprisonment, fines, or a denial of insurance benefits."

**Notice to Minnesota residents:** "A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime."

**Notice to New Hampshire residents:** "Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20."

**Notice to New Jersey residents:** "Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties."  "Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties."

**Notice to New Mexico residents:** "Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

**Notice to New York residents:** "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation."

**Notice to Ohio residents:** "Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

**Notice to Oklahoma residents:** "WARNING:  Any person who knowingly, and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete, or misleading information is guilty of a felony."

**Notice to Pennsylvania residents:** "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

**Notice to Tennessee, Virginia, and Washington residents:** "It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines, and denial of insurance benefits."

**Notice to Texas residents:** "Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison."

BUSINESSOWNERS
BP P 016 05 14

# BUSINESSOWNERS ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSIONS

## ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new and revised endorsements, which applies to your renewal policy being issued by us:

**BP 15 04 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception**

When this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 15 05 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included**

When this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 15 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Personal And Advertising Injury Only)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 05 95 – Electronic Data Liability – Limited Coverage**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**BP 05 96 – Electronic Data Liability – Broad Coverage**

With respect to the coverage provided by this endorsement, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, to the extent that damages arising out of theft or unauthorized viewing, copying, use, corruption, manipulation or deletion, of electronic data by any Named Insured, past or present employee, temporary worker or volunteer worker of the Named Insured may extend beyond loss of electronic data arising out of such theft or the other listed items, this revision may be considered a reduction in coverage.

          © Insurance Services Office, Inc., 2013          **BP P 016 05 14**

## Policyholder Notice

## How to Report a Claim

To report a claim, call toll free **1.844.723.2524**

When reporting a claim, provide:

- Policy number
- Date of loss
- Facts surrounding the loss
- Police/fire department information

You can also report a claim directly to your agent.

# Exhibit 2

**E-FILED**

MARCH 01, 2021

KIM MORRISON

CHELAN COUNTY CLERK

1

2

3

4

5

6

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CHELAN**

7    **STEPHANIE TAYLOR**, as Personal
Representative of **THE ESTATE OF BERT S.**
8    **STENNES**,

9            Plaintiff,

10       vs.                                    Case No.:  20-2-00461-04

11   **DAVID EBENGER**, individually, and **DAVID**      *AMENDED* **VERIFIED COMPLAINT FOR**
     **EBENGER** and **"JOHN or JANE DOE EBENGER,"**   **DAMAGES AND DECLARATORY RELIEF**
12   a marital community,

13      and,

14   **RUSSELL SPEIDEL,** individually, and **RUSSELL**
     **SPEIDEL and JEAN SPEIDEL,** a marital
15   community,

16      and,

17   **DAVID BENTSEN,** individually, and **DAVID**
     **BENTSEN and LINDSAY BENTSEN,** a marital
18   community,

19      and,

20   **SPEIDEL BENTSEN, LLP,** a Washington Limited
     Liability Partnership,
21

22      and,

23   **ALEXANDER THOMASON,** and **ALEXANDER**

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1   **THOMASON and KATY THOMASON,** a marital
community; and **VALOR LAW GROUP, P.S.**

2   *(formerly known as Thomason Justice, P.S.),* a
Washington Professional Service Corporation;

3   and **ALEX GROUP, LLC,** a Washington Limited
Liability Corporation; and **MAVERICK**

4   **HOLDINGS, LLC,** a Washington Limited Liability
Corporation; and **PJA HOLDINGS, INC.,** a

5   Washington corporation,

6       and,

7

8   **CODY GUNN,** individually; **CODY GUNN,** as
Personal Representative of the Estate of Bert S.

9   Stennes; **CODY GUNN and AMBER GUNN,** a
marital community; and **GUNN CAPITAL**

10  **MANAGEMENT, LLC,** a Washington Limited
Liability Corporation,

11      and,

12  **GARLAND CAPITAL MANAGEMENT, INC.,** a

13  Washington corporation,

14          Defendants.

15          Plaintiff, STEPHANIE TAYLOR, Personal Representative of the Estate of Bert Stennes, by

16  and through her counsel, Deborah Nelson and Jeffrey Boyd of Nelson Boyd, PLLC, upon

17  information and belief alleges as follows:

18                          I.       PARTIES

19

20  1.1     Plaintiff STEPHANIE TAYLOR is the duly appointed successor Personal Representative of

21          the Estate of Bert S. Stennes ("Bert's Estate").  Bert's Estate is being probated in Chelan

22          County under Case Number 17-4-00253-6.  Ms. Taylor was appointed by Order of the

23          Superior Court of Chelan County on October 3, 2019, and her letters testamentary

---

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 2

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

were issued on October 21, 2019.

1.2    At all material times, Defendant DAVID EBENGER was a resident of Okanogan County, Washington, and conducted business in Okanogan County, Washington.

1.3    Defendant DAVID EBENGER may be a married man.  However, because his marital status and the true name of his spouse is unknown, this lawsuit is filed against his spouse as "JOHN or JANE DOE" EBENGER.  Any acts of DAVID EBENGER alleged herein were done on behalf of their marital community.

1.4    Defendant DAVID EBENGER was at all relevant times an attorney licensed to practice law by the State of Washington, WSBA #4939.

1.5    Defendant DAVID EBENGER was at all relevant times an owner, shareholder, or partner of a law firm through which he provided legal services that are a subject of this Complaint.

1.6    At all material times, Defendant RUSSELL SPEIDEL was a married man who was a resident of Chelan County, Washington, and conducted business in Chelan County, Washington.

1.7    Defendant JEAN SPEIDEL is RUSSELL SPEIDEL's wife.  Any acts of RUSSELL SPEIDEL alleged herein were done on behalf of their marital community.

1.8    Defendant RUSSELL SPEIDEL was at all relevant times an attorney licensed to practice law by the State of Washington, WSBA #12838.

1.9    Defendant RUSSELL SPEIDEL was at all relevant times an owner, shareholder, or partner of a law firm named SPEIDEL BENTSEN, LLP through which he provided legal services that are a subject of this Complaint (hereafter "SPEIDEL BENTSEN").

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 3

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1.10   Defendant RUSSELL SPEIDEL was at all relevant times an employee or agent of SPEIDEL BENTSEN and was acting within the course and scope of his employment or agency with SPEIDEL BENTSEN during the time in which the actions took place that are the subject of this Complaint.

1.11   At all material times, Defendant DAVID BENTSEN was a married man who was a resident of Chelan County, Washington, and conducted business in Chelan County, Washington.

1.12    Defendant LINDSAY BENTSEN is DAVID BENTSEN's wife.  Any acts of DAVID BENTSEN alleged herein were done on behalf of their marital community.

1.13   Defendant DAVID BENTSEN was at all relevant times an attorney licensed to practice law by the State of Washington, WSBA #42107.

1.14   Defendant DAVID BENTSEN was at all relevant times an owner, shareholder, or partner of a law firm named SPEIDEL BENTSEN, LLP through which he provided legal services that are a subject of this Complaint (hereafter "SPEIDEL BENTSEN").

1.15   Defendant DAVID BENTSEN was at all relevant times an employee or agent of SPEIDEL BENTSEN and was acting within the course and scope of his employment or agency with SPEIDEL BENTSEN during the time in which the actions took place that are the subject of this Complaint.

1.16   At all material times hereto, Defendant SPEIDEL BENTSEN, LLP, is and was a Washington corporation, with its principle place of business in Chelan County, Washington.

1.17   At all material times, Defendant ALEXANDER ("ALEX") THOMASON was a married man

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 4

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

who was a resident of Okanogan County, Washington, and conducted business in Okanogan County, Washington.

1.18    Defendant KATY THOMASON is ALEXANDER THOMASON's wife.  Any acts of ALEXANDER THOMASON alleged herein were done on behalf of their marital community.

1.19    Defendant ALEXANDER THOMASON was at all relevant times an attorney licensed to practice law by the State of Washington, WSBA #35975.

1.20    Defendant ALEXANDER THOMASON was at all relevant times an owner, shareholder, or partner of a law firm currently named VALOR LAW GROUP, P.S. (formerly known as THOMASON JUSTICE, P.S.) through which he provided legal services that are a subject of this Complaint (hereafter "VALOR LAW GROUP").

1.21    Defendant ALEXANDER THOMASON was at all relevant times an employee or agent of VALOR LAW GROUP, P.S. (formerly known as THOMASON JUSTICE, P.S.) and was acting within the course and scope of his employment or agency with VALOR LAW GROUP during the time in which the actions took place that are the subject of this Complaint.

1.22    At all material times hereto, Defendant VALOR LAW GROUP, P.S. (formerly known as THOMASON JUSTICE, P.S.) is and was a Washington corporation, with its principle place of business in Okanogan County, Washington.

1.23    At all material times hereto, Defendant ALEX GROUP, LLC was a Washington Limited Liability Company formed in the State of Washington.  On information and belief, ALEX GROUP, LLC, is wholly owned by ALEXANDER and KATY THOMASON.

1.24    At all material times hereto, Defendant MAVERICK HOLDINGS, LLC was a Washington

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 5

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Limited Liability Company formed in the State of Washington.  On information and belief, MAVERICK HOLDINGS, LLC, is wholly owned by ALEXANDER and KATY THOMASON.

1.25   At all material times hereto, Defendant PJA HOLDINGS, INC. was a Washington corporation formed in the State of Washington.  On information and belief, PJA HOLDINGS, INC. is wholly owned by ALEXANDER and KATY THOMASON.

1.26   At all material times, Defendant CODY GUNN was a married man who was a resident of Okanogan County, Washington, and conducted business in Okanogan County, Washington.

1.27    Defendant AMBER GUNN is CODY GUNN's wife.  Any acts of CODY GUNN alleged herein were done on behalf of their marital community.

1.28   Defendant CODY GUNN was at all relevant times a registered investment adviser by the State of Washington, CRD #5611255.

1.29   Defendant CODY GUNN was at all relevant times an owner, shareholder, or partner of an investment firm named GUNN CAPITAL MANAGEMENT, LLC, through which he provided financial services that are a subject of this Complaint (hereafter "GUNN CAPITAL MANAGEMENT").

1.30   Defendant CODY GUNN was at all relevant times an employee or agent of GUNN CAPITAL MANAGEMENT and was acting within the course and scope of his employment or agency with GUNN CAPITAL MANAGEMENT during the time in which the actions took place that are the subject of this Complaint.

1.31   At all material times hereto, Defendant GUNN CAPITAL MANAGEMENT, LLC, was a

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 6

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Washington corporation, with its principle place of business in Okanogan County, Washington.

1.32    At all material times hereto, Defendant GARLAND CAPITAL MANAGEMENT, INC., was a Washington corporation, with its principle place of business in King County, Washington.

1.33    Defendant CODY GUNN was an employee or agent of Defendant GARLAND CAPITAL MANAGEMENT, INC. at the time when some of the acts complained of herein occurred.

1.34    Defendant CODY GUNN was acting within the course and scope of his employment or agency with GARLAND CAPITAL MANAGEMENT, INC. during the time in which some of the actions took place that are the subject of this Complaint.

## II.    JURISDICTION AND VENUE

2.1    This court has personal jurisdiction over each of the individuals and entities listed above.

2.2    This court has subject matter jurisdiction over each of the causes of action alleged herein.

2.3    Venue is proper in this court because some of the events that give rise to the causes of action herein occurred in Chelan County, Washington and the primary places of business of some of the Defendants are in Chelan County.

## III.    PROCEDURAL POSTURE

3.1    Bert Stennes, a resident of Okanogan County, Washington, died testate on August 12, 2017.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 7

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

3.2    Bert Stennes was 93 years old when he died.

3.3    Prior to his death, Bert Stennes had been diagnosed with Alzheimer's disease and vascular dementia.

3.4    Bert's Stennes's wife, Evelyn Stennes, died testate on January 16, 2009.

3.5    Bert and Evelyn Stennes had three children; Shanon (Stennes) Maitland, Eric Stennes, and Michael Stennes, all of whom are adults and all of whom are beneficiaries under the wills of Evelyn Stennes and Bert Stennes.

3.6    The Estate of Evelyn Stennes was initially opened in the Okanogan County Superior Court under Case Number 09-4-00027-1.  This Estate was later transferred to the Chelan County Superior Court.

3.7    On April 4, 2009, Bert Stennes was appointed Personal Representative of the Estate of Evelyn Stennes by the Okanogan County Superior Court under Case Number 09-4-00027-1.

3.8    Bert Stennes, in his capacity as Personal Representative of the Estate of Evelyn Stennes, was represented by attorney Robert White.

3.9    On November 7, 2017, Cody Gunn was appointed First Successor Personal Representative of the Estate of Evelyn Stennes by the Okanogan County Superior Court under Case Number 09-4-00027-1.

3.10    Cody Gunn, in his capacity as Personal Representative of the Estate of Evelyn Stennes, was represented by attorneys Russell Speidel and David Bentsen.

3.11    On November 7, 2017, the Okanogan County Superior Court transferred the Estate of Evelyn Stennes to Chelan County Superior Court where it was assigned Case Number

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 8

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

17-4-00332-0.

3.12    On June 6, 2018, Cody Gunn filed a notice to resign as First Successor Personal Representative of the Estate of Evelyn Stennes.

3.13    On July 12, 2018, Roberto Castro was appointed Second Successor Personal Representative of the Estate of Evelyn Stennes by the Chelan County Superior Court.

3.14    Roberto Castro, in his capacity as successor Personal Representative of the Estate of Evelyn Stennes, is represented by attorney Ann Wilson.

3.15    On July 2, 2018, the Estate of Evelyn Stennes asserted a creditor's claim against the Estate of Bert Stennes for Mr. Stennes's actions while he served as the personal representative of the Estate of Evelyn Stennes.  The Estate of Evelyn Stennes amended its creditor's claim against the Estate of Bert Stennes on January 30, 2019 and March 22, 2019.

3.16    Cody Gunn was appointed Personal Representative of the Estate of Bert Stennes on September 7, 2017, by the Chelan County Superior Court under Case Number 17-4-00253-6.

3.17    Cody Gunn, in his capacity as Personal Representative of the Estate of Bert Stennes, was represented by attorneys Russell Speidel and David Bentsen.

3.18    On June 6, 2018, Cody Gunn filed a notice to resign as Personal Representative of the Estate of Bert Stennes.

3.19    On July 12, 2018, Daniel Appel was appointed First Successor Personal Representative of the Estate of Bert Stennes by the Chelan County Superior Court.

3.20    Daniel Appel, in his capacity as successor Personal Representative of the Estate of Bert

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 9

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1       Stennes, was represented by attorneys Russell Speidel and David Bentsen.

2   3.21   On September 26, 2019, Daniel Appel was removed as First Successor Personal

3       Representative of the Estate of Bert Stennes by the Chelan County Superior Court.

4   3.22   On October 3, 2019, Stephanie Taylor was appointed Second Successor Personal

5       Representative of the Estate of Bert Stennes by the Chelan County Superior Court.

6   3.23   Stephanie Taylor, in her capacity as successor Personal Representative of the Estate of

7       Bert Stennes, is represented by Randall Danskin, P.S.

8

## IV.    FACTS

9

### Background

10

4.1   Bert Stennes, a resident of Okanogan County, Washington, died testate on August 12,

11

2017.

12

4.2   Bert Stennes was 93 years old when he died.

13

4.3   Prior to his death, Bert Stennes had been diagnosed with Alzheimer's disease and

14

vascular dementia.

15

4.4   Bert's Stennes's wife, Evelyn Stennes, died testate on January 16, 2009.

16

4.5   Bert and Evelyn Stennes had three children; Eric Stennes, Shanon (Stennes) Maitland,

17

and Michael Stennes, all of whom are adults and all of whom are beneficiaries under

18

the wills of Evelyn Stennes and Bert Stennes.

19

4.6   Alexander Thomason met Bert Stennes in 2012, when he was 37 and Mr. Stennes was

20

an 88-year-old widower.

21

4.7   Within a year of meeting, Alexander Thomason had become Bert Stennes's lawyer,

22

friend, neighbor, and the recipient of numerous gifts and business transactions.

23

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 10

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.8    It is alleged that all of the activities alleged herein took place when Alexander Thomason was acting in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity.

4.9    It is alleged that all of the activities alleged herein took place when Bert Stennes was a potentially vulnerable adult as defined under RCW 74.34.020.

**Business Dealings and Transactions with Client**
**Loans & Real Estate Transactions**

4.10   Alexander Thomason served as Bert Stennes's attorney in some capacity from approximately 2013 until Mr. Stennes's death in 2017.

4.11   Alexander Thomason billed Bert Stennes for some legal work performed and was paid for that work.

4.12   It is alleged that Bert Stennes paid over $240,000.00 to Alexander Thomason for legal services provided to him and his son, Michael Stennes.

4.13   At some point, Alexander Thomason was named as Bert Stennes's Attorney-in-Fact.

4.14   On April 5, 2013, Alexander Thomason signed a Promissory Note borrowing Four Hundred Thousand Dollars ($400,000.00) from his client, Bert Stennes.

4.15   It is alleged that Alexander Thomason drafted, or caused a third party to draft, the documents evidencing the loan from his client, Bert Stennes, to him.

4.16   The loan from Bert Stennes to Alexander Thomason included extremely favorable terms to Mr. Thomason, which terms would not ordinarily be utilized between a lender and a borrower in an arms-length transaction.

4.17   The Promissory Note provided for no interest payments during the first seven (7) years

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 11

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

of the term.

4.18    Alexander Thomason utilized the funds borrowed from Bert Stennes as a down

payment on the purchase of real property, commonly known as 30 Stennes Point

Drive, Okanogan County, Washington, which was adjoining Bert Stennes's property.

4.19    Bert Stennes signed Check Number 17055 dated April 24, 2013 payable to Idaho

Professional Title in the amount of Three Hundred Thousand Dollars ($300,000.00).

4.20    Check Number 17055 from Bert Stennes to Idaho Professional Title was for the benefit

of Alexander Thomason and was a payment in connection with Mr. Thomason's

purchase of the real property commonly known as 30 Stennes Point Drive.

4.21    Some of Alexander Thomason's business dealings with his client, Bert Stennes, were

undertaken via a Washington corporation known as PJA Holdings, Inc. of which "Alex

Thomason" was president at all material times.

4.22    All actions taken by and on behalf of PJA Holdings, Inc. were for the benefit of

Alexander Thomason, Katy Thomason, and their marital community.

4.23    On or about April 5, 2013, during the time that Alexander Thomason was in a

confidential relationship as Bert Stennes's attorney and trusted advisor in some

capacity, PJA Holdings, Inc., by and through Alexander Thomason, entered into an

Orchard Lease Agreement with Bert Stennes and Stennes Point Orchards, Inc.

4.24    The Orchard Lease Agreement was signed by "Alex Thomason" as "President" of PJA

Holdings, Inc.

4.25    The terms contained in the Orchard Lease Agreement were extremely favorable to PJA

Holdings, Inc. and/or Alexander Thomason.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 12

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1

4.26    It is alleged that Alexander Thomason drafted, or caused a third party to draft, the

2

documents evidencing the lease which included terms that would not ordinarily be

3

utilized between a lessor and a lessee in an arms-length transaction.

4

4.27    PJA Holdings, Inc. was identified in the Orchard Lease Agreement as the "owner" of

5

the real property known as 30 Stennes Point Drive, Okanogan County, Washington.

6

4.28    The Orchard Lease Agreement required Bert Stennes and Stennes Point Orchards, Inc.

7

to pay $75,000 in rent per year to PJA Holdings, Inc.

8

4.29    The Orchard Lease Agreement obligated Bert Stennes to level several acres of

9

Alexander Thomason's land, plant apple trees and install an irrigation system.

10

4.30    On or about April 10, 2014, during the time that Alexander Thomason was in a

11

confidential relationship as Bert Stennes's attorney and trusted advisor in some

12

capacity, Mr. Thomason, by and through PJA Holdings, Inc., entered into a Joint

13

Operating Orchard Agreement with Bert Stennes and Stennes Point Orchards, Inc.

14

4.31    It is alleged that Alexander Thomason drafted, or caused a third party to draft, the

15

Joint Operating Orchard Agreement.

16

4.32    The Joint Operating Orchard Agreement contained terms that were extremely

17

favorable to PJA Holdings, Inc. and/or Alexander Thomason and which would not

18

ordinarily be utilized between parties to an arms-length transaction.

19

4.33    PJA Holdings, Inc. is identified as "the management company for Alex Group, LLC" in

20

the Joint Operating Agreement.

21

4.34    The Joint Orchard Operating Agreement represents that Alex Group, LLC "owns certain

22

real property, together with improvements located thereon, situated in [sic] 30

23

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 13

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1    Stennes Point Drive, Okanogan County, Washington."

2    4.35    The Joint Orchard Operating Agreement required Bert Stennes and Stennes Point

3    Orchards, Inc. to pay rent to PJA Holdings, Inc.

4    4.36    The Joint Orchard Operating Agreement was signed by "Alex Thomason" as

5    "President" of PJA Holdings, Inc.

6    4.37    On or about May 8, 2015, Bert Stennes entered into an Agreement to Amend

7    Promissory Note and Joint Operating Agreement ("2015 Amendment") which

8    contained extremely favorable terms to Alexander Thomason and was detrimental to

9    Bert Stennes and his estate.

10    4.38    The 2015 Amendment provided that the principal debt owing on the 2013 Note was to

11    be reduced by the sum of $13,333 per month until the balance was zero dollars.  The

12    2015 Amendment contemplated that approximately 30 months after May 2015, the

13    2013 Note and 2014 Lease would be cancelled.

14    4.39    As a result of the 2015 Amendment, all of the orchard improvements that Bert Stennes

15    had undertaken pursuant to the Orchard Lease Agreement became Alexander

16    Thomason's property.

17    4.40    Bert Stennes paid approximately $200,000 for the orchard improvements.

18    4.41    Bert Stennes incurred debt as a result of the real estate transactions with his lawyer,

19    Alexander Thomason.

20    4.42    It is alleged that Alexander Thomason drafted, or caused a third party to draft, the

21    Agreement to Amend Promissory Note and Joint Operating Agreement which

22    contained terms that were extremely favorable to Mr. Thomason and which would not

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 14

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

ordinarily be utilized between "strangers" to the transaction.

4.43    On June 15, 2016, Alexander Thomason submitted a Boundary Line Adjustment Application.

4.44    The Boundary Line Adjustment deeded a narrow strip of land owned by Bert Stennes to Alex Group for a purported payment of $6,000.

4.45    Bert Stennes was never paid any money or consideration for the Boundary Line Adjustment.

4.46    It is alleged that Alexander Thomason drafted, or caused a third party to draft, the Boundary Line Adjustment which contained terms that were extremely favorable to Mr. Thomason and which would not ordinarily be utilized between "strangers" to the transaction.

4.47    It is alleged that Alexander Thomason was in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity at the time of the Boundary Line Adjustment transaction.

4.48    It is alleged that two Quit Claim Deeds were submitted by Alexander Thomason's law firm, Thomason Law & Justice, as part of the Boundary Line Adjustment transaction.

4.49    The Boundary Line Adjustment transaction resulted in a change in title and a loss of real property to Bert Stennes.

4.50    The Boundary Line Adjustment resulted in a loss of an asset with value to Bert Stennes's real property.

4.51    It is alleged that Bert Stennes was unaware that the Boundary Line Adjustment would result in a change in title and loss of value to his real property.

AMENDED VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 15

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.52    It is alleged that Bert Stennes did not have independent legal counsel representing him in conjunction with the Boundary Line Adjustment.

4.53    On or about November 16, 2016, Bert Stennes entered into an Agreement Cancelling Note and Terminating Joint Operating Agreement with "Alex Thomason," "Alex Group, LLC" and "PJA Holdings, Inc." that were identified as "collectively ALEX."

4.54    It is alleged that Alexander Thomason may have drafted, or caused a third party to draft, the Agreement Cancelling Note and Terminating Joint Operating Agreement which contained terms that were extremely favorable to Mr. Thomason and which would not ordinarily be utilized between parties to an arms-length transaction.

4.55    The loan forgiveness on the 2014 Promissory Note had the effect of cancelling $400,000 of debt, which Alexander Thomason would have owed to Bert Stennes but for the 2015 Amendment and the 2016 Agreement Cancelling Note.

4.56    Alexander Thomason did not pay income taxes on the forgiveness of the Promissory Note because it was claimed as a gift on Bert Stennes's tax returns.

4.57    It is alleged that Russell Speidel and/or David Bentsen may have been involved in drafting the Agreement Cancelling Note and Terminating Joint Operating Agreement which contained terms that were extremely favorable to Mr. Thomason and which would not ordinarily be utilized between parties to an arms-length transaction.

4.58    Russell Speidel and/or David Bentsen knew or should have ascertained that Alexander Thomason was in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity when they were involved in the creation of the Agreement Cancelling Note and Terminating Joint Operating Agreement.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 16

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.59    Russell Speidel and/or David Bentsen received a letter from attorney Robert White dated September 13, 2016, addressed to both of them advising them that he did not believe documents that they drafted were "in the best interest of Mr. Stennes or his estate."

4.60    It is alleged that David Ebenger may have been involved in drafting and/or reviewing the Agreement Cancelling Note and Terminating Joint Operating Agreement which contained terms that were extremely favorable to Mr. Thomason and which would not ordinarily be utilized between parties to an arms-length transaction.

4.61    It is alleged that David Ebenger knew or should have ascertained that Alexander Thomason was in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity when he was involved in the creation or execution of the Agreement Cancelling Note and Terminating Joint Operating Agreement.

4.62    The Agreement Cancelling Note and Terminating Joint Operating Agreement was signed by Alex Thomason, individually, by Alex Thomason as a "member" of Alex Group, LLC, by Alex Thomason as "President" of PJA Holdings, Inc., and by Katy Thomason.

4.63    At some point after Bert Stennes's death, Alexander Thomason accessed a waterline used by real property owned by the Estate of Bert Stennes by using a pump located on the Estate's real property and added a valve allowing Mr. Thomason to divert water from the Estate's property to his own property.

4.64    It is alleged that when Alexander Thomason accesses the Estate's waterline, it can cause water runoff onto the Estate's property and lower the water pressure, thus

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 17

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

preventing the Estate from making use of that waterline.

4.65    Neither Alexander Thomason, Katy Thomason, or any of their affiliated businesses or corporations have been granted permission by Bert Stennes or his Estate to access this waterline.

4.66    It is alleged that no other property owners have granted Alexander Thomason, Katy Thomason, or any of their affiliated businesses or corporations permission to access this waterline.

4.67    After Bert Stennes's death, Alexander Thomason installed a 6-foot-tall fence on the real property now owned by the Estate of Bert Stennes blocking access to that property and severely diminishing its value.

4.68    Alexander Thomason subsequently filed a creditor's claim against the Estate of Bert Stennes seeking reimbursement for the fence that he unilaterally caused to be installed on real property owned by the Estate of Bert Stennes.

**Estate Planning**

4.69    Alexander Thomason introduced Bert Stennes to various professionals, including attorneys and Mr. Thomason's business partner and brother-in-law, Cody Gunn, who had pre-existing relationships with Mr. Thomason.

4.70    It is further alleged that these professionals engaged in activities with Bert Stennes that benefitted Alexander Thomason to the detriment of Mr. Stennes and, ultimately, to the detriment of Mr. Stennes's estate.

4.71    It is also alleged that these professionals knew or should have ascertained that Alexander Thomason was in a confidential relationship as Bert Stennes's attorney and

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 18

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

trusted advisor in some capacity at the time he engaged in business transactions and received loans from Mr. Stennes.

4.72   It is alleged that in late 2014, when Bert Stennes was almost ninety (90) years old, Alexander Thomason introduced Mr. Stennes to a new attorney, David Ebenger.

4.73   Mr. Stennes had no prior professional relationship with Mr. Ebenger prior to the introduction facilitated by Alexander Thomason.

4.74   David Ebenger drafted a will (the "Ebenger Will") that included provisions that were extremely favorable to Alexander Thomason and were detrimental to Bert Stennes and his Estate.

4.75   The Ebenger Will left Bert Stennes's entire Estate in the hands of his attorney, Alexander Thomason, as Trustee and Alexander Thomason was granted the right to distribute Mr. Stennes's estate in his "sole discretion and judgment."

4.76   Bert Stennes signed the Ebenger Will on November 19, 2014.

4.77   David Ebenger also drafted a General Power of Attorney for Bert Stennes naming Alexander Thomason as Mr. Stennes's Attorney-In-Fact.

4.78   Bert Stennes signed the General Power of Attorney drafted by David Ebenger on November 24, 2014.

4.79   It is alleged that Alexander Thomason was in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity when David Ebenger drafted the Ebenger Will and the General Power of Attorney for Bert Stennes naming Alexander Thomason as Attorney-In-Fact for Mr. Stennes.

4.80   It is alleged that David Ebenger knew or should have ascertained that Alexander

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 19

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Thomason was in a confidential relationship as Bert Stennes's attorney and trusted advisor in some capacity at the time that David Ebenger drafted the Ebenger Will and/or General Power of Attorney.

4.81    It is alleged that in 2015, Alexander Thomason sent an email to David Ebenger from Mr. Thomason's email address purportedly from Bert Stennes authorizing Alexander Thomason to speak on behalf of Mr. Stennes.

4.82    It is alleged that throughout the course of preparing estate planning documents for Bert Stennes, David Ebenger took his direction from Alexander Thomason and communicated with him extensively, with little or no input from or consultation with his client, Bert Stennes.

4.83    It is alleged that Bert Stennes first met attorneys Russell Speidel and David Bentsen from the law firm Speidel Bentsen, LLP on March 10, 2016.

4.84    Alexander Thomason attended the meeting between Bert Stennes and Russell Speidel and David Bentsen on March 10, 2016.

4.85    It is alleged that Bert Stennes was introduced to Russell Speidel and David Bentsen by Alexander Thomason and that Mr. Stennes has no prior professional relationship with either Russell Speidel or David Bentsen prior to the introduction facilitated by Alexander Thomason.

4.86    It is alleged that the law firm of Speidel Bentsen, LLP prepared a new Will for Bert Stennes ("Speidel Will").

4.87    It is further alleged that the Speidel Will changed the nomination of fiduciaries and the beneficiaries of Bert Stennes's estate, including adding Alexander Thomason as a

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 20

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1    beneficiary of a specific bequest.

2    4.88    The Speidel Will also included an exculpatory clause that purports to benefit Alexander

3    Thomason to the detriment of Bert Stennes's Estate.

4    4.89    It is alleged that Alexander Thomason was in a confidential relationship as Bert

5    Stennes's attorney and trusted advisor in some capacity when the Speidel Will was

6    prepared.

7    4.90    It is alleged that Russell Speidel and/or David Bentsen knew that Alexander Thomason

8    was in a confidential relationship as Bert Stennes's attorney and trusted advisor in

9    some capacity when they prepared the Speidel Will.

10    4.91    Robert White, who was Bert Stennes's long-term estate planning attorney, opined in a

11    letter addressed to Russell Speidel and David Bentsen that the Speidel Will was not in

12    the best interests of Bert Stennes or his estate.

13    4.92    Following receipt of Robert White's letter, Alexander Thomason took Bert Stennes to

14    David Ebenger, the attorney who had drafted the Ebenger Will that contained

15    provisions favorable to Alexander Thomason, for a review of the Speidel Will.

16    4.93    It is alleged that David Ebenger knew or should have ascertained that Alexander

17    Thomason was in a confidential relationship as Bert Stennes's attorney and trusted

18    advisor in some capacity when Mr. Ebenger was asked to give an independent,

19    professional opinion about the Speidel Will.

20    4.94    It is alleged that throughout the course of preparing estate planning documents for

21    Bert Stennes, the attorneys at Speidel Bentsen, LLP took their direction from Alexander

22    Thomason and communicated with him extensively, with little or no input from or

23

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 21

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

consultation with their client, Bert Stennes.

4.95    It is further alleged that one of the primary goals of the Estate plan, as indicated in Speidel Bentsen's files was "to fully protect Alex."

4.96    On November 16, 2016, the same day that he forgave the $400,000 loan to his attorney, Alexander Thomason, Bert Stennes executed his final Last Will and Testament, which was drafted by Speidel Bentsen, LLP.

4.97    On or about February 3, 2017, when he sent a bill for services to Bert Stennes, Russell Speidel wrote a note at the bottom of the cover letter suggesting that his 92-year-old client adopt Alexander Thomason, his lawyer, as his son, stating, as follows:

> Bert,
> what do you think about my idea that you would adopt Alex as your son? You said you regard him as a son.    —Russ Speidel

### Cody Gunn

4.98    Bert Stennes's will was admitted to probate on September 6, 2017.

4.99    Cody Gunn was appointed as the first Personal Representative of the Estate of Bert Stennes.

4.100    Cody Gunn is Alexander Thomason's business partner and brother-in-law.

4.101    Cody Gunn is an investment advisor registered with the state of Washington.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 22

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.102  An investment advisor is a fiduciary who owes an undivided duty of loyalty to his clients.

4.103  An investment advisor has a duty to use that degree of skill, care, diligence, and knowledge possessed and used by a reasonable, careful, and prudent investment advisor in the State of Washington acting in the same or similar circumstances in their representation.

4.104  According to Cody Gunn's LinkedIn page, he was employed as Vice President with Garland Capital Management, Inc. from August 2008 through June 2014.

4.105  It is alleged that in approximately 2013, Bert Stennes withdrew all the money and stocks that he and his wife, Evelyn, had maintained in a UBS investment account since before her death and deposited them into an investment account managed by Cody Gunn.

4.106  It is alleged that these investments totaled over two million dollars.

4.107  The transfer of Bert Stennes's assets from his long-term investment advisor to Cody Gunn occurred when Mr. Gunn was employed by and within the scope of his employment with Garland Capital Management, Inc.

4.108  The transfer of Bert Stennes's investment assets to Garland Capital Management, Inc. benefitted not only Cody Gunn, Amber Gunn, and their marital community, but also Mr. Gunn's employer, Garland Capital Management, Inc.

4.109  It is alleged that, at the time of the transfer of Bert Stennes's investments to Garland Capital Management, Inc., Bert Stennes was a vulnerable adult as set forth in RCW 74.34.020.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 23

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.110   In June 2014, Cody Gunn founded Gunn Capital Management, LLC where he serves as President.

4.111   In the summer of 2014, Bert Stennes's assets that were previously managed by Garland Capital Management, Inc. were transferred to Gunn Capital Management, LLC.

4.112   The transfer of Bert Stennes's investment assets to Gunn Capital Management, LLC benefitted not only Cody Gunn, Amber Gunn, and their marital community, but also his employer Gunn Capital Management, LLC.

4.113   It is alleged that, at the time of the transfer of Bert Stennes's investments to Gunn Capital Management, LLC, Bert Stennes was a vulnerable adult as set forth in RCW 74.34.020.

4.114   Cody Gunn served as the First Personal Representative of the Estate of Bert Stennes at the same time that he was serving as the First Successor Personal Representative of the Estate of Evelyn Stennes.

4.115   Cody Gunn was represented by Speidel Bentsen, LLP during his entire tenure as personal representative of each of the Stennes estates.

4.116   It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn committed waste upon the real property of the Estate by failing to winterize the sprinkler system, causing harm to the value of the real property.

4.117   It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn committed waste upon the real property of the Estate by removing valuable orchard trees, causing harm to the value of the real property.

4.118   It is alleged that while he was Personal Representative of the Estate of Bert Stennes,

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 24

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Cody Gunn committed waste upon the real property of the Estate by failing to mitigate damage to the real property as a result of the removal of the orchard trees, causing harm to the value of the real property.

4.119  It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn refused to provide information to the Estate's beneficiaries necessary to protect their interests.

4.120  It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn refused to comply with court orders requiring the Estate to produce certain documents and information.

4.121  It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn caused the Estate to incur legal fees charged by his legal counsel at Speidel Bentsen, LLP to challenge court orders requiring the Estate to produce certain documents and information.

4.122  It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn conspired with Alexander Thomason to prevent beneficiaries from receiving information necessary to protect their interests.

4.123  It is alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn refused to comply with court orders requiring the production of attorney files.

4.124  It alleged that while he was Personal Representative of the Estate of Bert Stennes, Cody Gunn used his own company, Gunn Capital Management, LLC to invest Estate assets and took a profit from same.

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 25

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

4.125   Cody Gunn had an insurmountable conflict of interest because he was serving as the Personal Representative of both the Estate of Evelyn Stennes and the Estate of Bert Stennes.

4.126   While he was serving as the Personal Representative of both estates, Cody Gunn filed a creditor's claim on behalf of the Estate of Evelyn Stennes against the Estate of Bert Stennes.

4.127   As Personal Representative of the Estate of Bert Stennes, Cody Gunn received payment of approximately $46,000 for his work as personal representative of that estate.

4.128   While he was serving as Personal Representative of the Estate of Bert Stennes, Cody Gunn received payment of management fees for serving as investment advisor to the Estate of Bert Stennes at the same time that he was serving as the Estate's Personal Representative.

### V.      ATTORNEY-CLIENT RELATIONSHIP, FIDUCIARY DUTY, and LEGAL REPRESENTATION

5.1   Plaintiff incorporates by reference paragraphs 1.1 through 4.128 as if fully set forth herein and further alleges as follows.

**Alexander Thomason**

5.2   Defendant Alexander Thomason had an attorney-client relationship with Bert Stennes.

5.3   Defendant Alexander Thomason had a fiduciary duty to Bert Stennes.

5.4   Defendant Alexander Thomason represented Bert Stennes as his attorney.

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 26

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

**David Ebenger**

5.5     Defendant David Ebenger had an attorney-client relationship with Bert Stennes.

5.6     Defendant David Ebenger had a fiduciary duty to Bert Stennes.

5.7     Defendant David Ebenger represented Bert Stennes as his attorney.

**Russell Speidel**

5.8     Defendant Russell Speidel had an attorney-client relationship with Bert Stennes.

5.9     Defendant Russell Speidel had a fiduciary duty to Bert Stennes.

5.10    Defendant Russell Speidel represented Bert Stennes as his attorney.

**David Bentsen**

5.11    Defendant David Bentsen had an attorney-client relationship with Bert Stennes.

5.12    Defendant David Bentsen had a fiduciary duty to Bert Stennes.

5.13    Defendant David Bentsen represented Bert Stennes as his attorney.

### VI.     FIRST CAUSE OF ACTION – LEGAL MALPRACTICE and NEGLIGENCE

6.1     Plaintiff incorporates by reference paragraphs 1.1 through 5.13 as if fully set forth

        herein and further alleges as follows.

**Alexander Thomason**

6.2     As an attorney representing Bert Stennes, Defendant Alexander Thomason had a duty

        to use that degree of skill, care, diligence, and knowledge possessed and used by a

        reasonable, careful, and prudent attorney in the State of Washington acting in the

        same or similar circumstances in his representation of Bert Stennes.

6.3     Defendant Alexander Thomason breached his duty to Bert Stennes, and negligently

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 27

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

failed to take the necessary steps to protect Bert Stennes's rights.

6.4    At all material times, Defendant Alexander Thomason was an agent or employee of Thomason Justice, P.S., and through its successor in interest, Valor Law Group, P.S., and was acting within the course and scope of his employment or agency.

6.5    As an attorney and as the principle of Thomason Justice, P.S., and through its successor in interest, Valor Law Group, P.S., who was representing Bert Stennes, Defendant Alexander Thomason owed a fiduciary duty to Bert Stennes. This fiduciary duty requires that all dealings between the attorney and client be characterized by the utmost fairness and good faith by the attorney to the client.

6.6    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington require that a lawyer shall provide competent representation to a client. *RPC 1.1*. Defendant Alexander Thomason failed to meet that standard of care and violated this Rule.

6.7    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington require that a lawyer shall act with reasonable diligence and promptness in representing a client. *RPC 1.3*.  Defendant Alexander Thomason failed to meet that standard of care and violated this Rule.

6.8    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington state as follows:

**(a)**  A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

**(1)**  the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 28

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

**(2)** the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of an independent lawyer on the transaction; and

**(3)** the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

**(b)** A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

**(c)** A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of the client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include spouse, child, grandchild, parent, grandparent or other relative or individual with who the lawyer or the client maintains a close, familial relationship.

*RPC 1.8.* Defendant Alexander Thomason violated these Rules.

6.9     The Washington Supreme Court has held: "The relation of attorney and client has always been regarded as one of special trust and confidence.  The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them.  So strict is the rule on this subject that dealings between an attorney, and his client are held, as against the attorney, to be *prima facie* fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." *In Re Beakely*, 6 Wn.2d. 410, 424 (1940). The dealings referenced above were not characterized by the utmost fairness and good faith. Accordingly, the transactions referenced above are

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 29

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

*prima facie* fraudulent and void at the inception.

6.10    Defendant Alexander Thomason was negligent in his representation of Bert Stennes. As a proximate cause of Defendant Alexander Thomason's negligence, Bert Stennes suffered damages.

6.11    Defendant Alexander Thomason breached his fiduciary duty to Bert Stennes. As a proximate cause of Defendant Alexander Thomason's breach of his fiduciary duty, Bert Stennes suffered damages.

6.12    Defendant Alexander Thomason's conduct in his representation of Bert Stennes was negligent, and breached his fiduciary duty to Bert Stennes, in multiple ways, which include, but are not limited to:

a)      Entering into business dealings with his client;

b)      Soliciting and/or receiving gifts from his client;

c)      Taking advantage of a vulnerable adult;

d)      Procuring estate planning documents and testamentary gifts that benefitted him;

e)      Attempting to obtain waivers of violations of the Rules of Professional Conduct and legal malpractice claims against him by the use of voidable releases;

f)      Causing his client to incur debt in order to make large gifts to him.

6.13    Bert Stennes and thus his estate were damaged by Defendant Alexander Thomason's conduct as referenced above.

6.14    Bert Stennes was damaged by paying attorney's fees and expenses to Defendant Alexander Thomason.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 30

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

6.15    Bert Stennes and thus his estate were deprived of the use of property and assets as a result of the actions of Defendant Alexander Thomason.

6.16    Defendant Alexander Thomason, Katy Thomason, their corporations, and their marital community are liable to the Estate of Bert Stennes for a disgorgement of his attorney's fees.

**David Ebenger**

6.17    As an attorney representing Bert Stennes, Defendant David Ebenger had a duty to use that degree of skill, care, diligence, and knowledge possessed and used by a reasonable, careful, and prudent attorney in the State of Washington acting in the same or similar circumstances in his representation of Bert Stennes.

6.18    Defendant David Ebenger breached his duty to Bert Stennes, and negligently failed to take the necessary steps to protect Bert Stennes's rights.

6.19    As an attorney, Defendant David Ebenger owed a fiduciary duty to Bert Stennes. This fiduciary duty requires that all dealings between the attorney and client be characterized by the utmost fairness, honesty, and good faith by the attorney to the client.

6.20    The Rules of Professional Conduct and Washington law applicable to all attorneys licensed in the State of Washington require that a lawyer shall provide competent representation to a client. *RPC 1.1*. Defendant David Ebenger failed to meet that standard of care and violated this Rule.

6.21    The Rules of Professional Conduct and Washington law applicable to all attorneys licensed in the State of Washington require that a lawyer shall act with reasonable

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 31

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

diligence and promptness in representing a client. *RPC 1.3.* Defendant David Ebenger

failed to meet that standard of care and violated this Rule.

6.22    The Rules of Professional Conduct applicable to all attorneys licensed in the State of

Washington state as follows:

**(a)** A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

**(1)** the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

**(2)** the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of an independent lawyer on the transaction; and

**(3)** the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

**(b)** A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

**(c)** A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of the client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include spouse, child, grandchild, parent, grandparent or other relative or individual with who the lawyer or the client maintains a close, familial relationship.

*RPC 1.8.* Defendant David Ebenger was a party to Defendant Alexander Thomason's

actions which violated these Rules.

6.23    The Washington Supreme Court has held: "The relation of attorney and client has

always been regarded as one of special trust and confidence.  The law therefore

requires that all dealings between an attorney and his client shall be characterized by

the utmost fairness and good faith, and it scrutinizes with great closeness all

transactions had between them.  So strict is the rule on this subject that dealings

between an attorney, and his client are held, as against the attorney, to be *prima facie*

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 32

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." *In Re Beakely*, 6 Wn.2d. 410, 424 (1940). The dealings referenced above were not characterized by the utmost fairness and good faith. Accordingly, the transactions referenced above are *prima facie* fraudulent and void at the inception.

6.24    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington prohibit attorneys from making an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented by a lawyer in making the agreement.  RPC 1.8(h)(1).

6.25    Defendant David Ebenger drafted and/or caused his client, Bert Stennes, to sign an Agreement to Amend Promissory Note and Joint Operating Agreement that contained extensive exculpatory clauses attempting to relieve Alexander Thomason from liability for engaging in business dealings with his client, despite the prohibition against such clauses in the Rules of Professional Conduct.

6.26    Defendant David Ebenger was negligent in his representation of Bert Stennes.  As a proximate cause of Defendant David Ebenger's negligence, Bert Stennes suffered damages.

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 33

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

6.27   Defendant David Ebenger breached his fiduciary duty to Bert Stennes. As a proximate cause of Defendant David Ebenger's breach of his fiduciary duty, Bert Stennes suffered damages.

6.28   Defendant David Ebenger's conduct in his representation of Bert Stennes was negligent, and breached his fiduciary duty to Bert Stennes, in multiple ways, which include, but are not limited to:

a)   Taking his direction about the content of estate planning documents from his client's attorney, despite the fact that doing so would be disadvantageous to his client and ultimately his client's estate;

b)   Failing to uphold his fiduciary duty to his client to prevent him from being taken advantage of by his attorney who sought to procure gifts;

c)   Taking advantage of a vulnerable adult;

d)   Preparing estate planning documents that created testamentary gifts benefitting his client's attorney; and

e)   Attempting to obtain waivers of violations of the Rules of Professional Conduct and legal malpractice claims against his client's attorney by the use of voidable releases.

6.29   Bert Stennes and thus his estate were damaged by Defendant David Ebenger's conduct as referenced above.

6.30   Bert Stennes was damaged by paying attorney's fees and expenses to Defendant David Ebenger.

6.31   Bert Stennes and thus his estate were deprived of the use of property and assets as a

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 34

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

result of the actions of Defendant David Ebenger.

6.32    Defendant David Ebenger is liable to the Estate of Bert Stennes for a disgorgement of his attorney's fees.

**Russell Speidel**

6.33    As an attorney representing Bert Stennes, Defendant Russell Speidel had a duty to use that degree of skill, care, diligence, and knowledge possessed and used by a reasonable, careful, and prudent attorney in the State of Washington acting in the same or similar circumstances in his representation of Bert Stennes.

6.34    Defendant Russell Speidel breached his duty to Bert Stennes, and negligently failed to take the necessary steps to protect Bert Stennes's rights.

6.35    At all material times, Defendant Russell Speidel was an agent or employee of Speidel Bentsen, LLP, and was acting within the course and scope of his employment or agency.

6.36    As an attorney, Defendant Russell Speidel owed a fiduciary duty to Bert Stennes. This fiduciary duty requires that all dealings between the attorney and client be characterized by the utmost fairness, honesty, and good faith by the attorney to the client.

6.37    The Rules of Professional Conduct and Washington law applicable to all attorneys licensed in the State of Washington require that a lawyer shall provide competent representation to a client. *RPC 1.1*. Defendant Russell Speidel failed to meet that standard of care and violated this Rule.

6.38    The Rules of Professional Conduct and Washington law applicable to all attorneys

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 35

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1  licensed in the State of Washington require that a lawyer shall act with reasonable

2  diligence and promptness in representing a client. *RPC 1.3.*  Defendant Russell Speidel

3  failed to meet that standard of care and violated this Rule.

4  6.39    The Rules of Professional Conduct applicable to all attorneys licensed in the State of

5  Washington state as follows:

6
    **(a)** A lawyer shall not enter into a business transaction with a client or knowingly acquire an
7  ownership, possessory, security or other pecuniary interest adverse to a client unless:

8        **(1)** the transaction and terms on which the lawyer acquires the interest are fair and
        reasonable to the client and are fully disclosed and transmitted in writing in a manner that
9        can be reasonably understood by the client;

10        **(2)** the client is advised in writing of the desirability of seeking and is given a reasonable
        opportunity to seek the advice of an independent lawyer on the transaction; and

11        **(3)** the client gives informed consent, in a writing signed by the client, to the essential
        terms of the transaction and the lawyer's role in the transaction, including whether the
        lawyer is representing the client in the transaction.
12
    **(b)** A lawyer shall not use information relating to representation of a client to the
13  disadvantage of the client unless the client gives informed consent, except as permitted or
    required by these Rules.
14
    **(c)** A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or
    prepare on behalf of the client an instrument giving the lawyer or a person related to the
15  lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the
    client. For purposes of this paragraph, related persons include spouse, child, grandchild,
16  parent, grandparent or other relative or individual with who the lawyer or the client maintains
    a close, familial relationship.

17    *RPC 1.8.* Defendant Russell Speidel was a party to Defendant Alexander Thomason's

18    actions which violated these Rules.

19  6.40    The Washington Supreme Court has held: "The relation of attorney and client has

20    always been regarded as one of special trust and confidence.  The law therefore

21    requires that all dealings between an attorney and his client shall be characterized by

22    the utmost fairness and good faith, and it scrutinizes with great closeness all

23    transactions had between them.  So strict is the rule on this subject that dealings

between an attorney, and his client are held, as against the attorney, to be *prima facie* fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." *In Re Beakely*, 6 Wn.2d. 410, 424 (1940). The dealings referenced above were not characterized by the utmost fairness and good faith. Accordingly, the transactions referenced above are *prima facie* fraudulent and void at the inception.

6.41    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington prohibit attorneys from making an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented by a lawyer in making the agreement.  RPC 1.8(h)(1).

6.42    Defendant Russell Speidel drafted and/or caused his client, Bert Stennes, to sign an Agreement Cancelling Note and Terminating Joint Operating Agreement that contained extensive exculpatory clauses attempting to relieve Alexander Thomason from liability for engaging in business dealings with his client, despite the prohibition against such clauses in the Rules of Professional Conduct.

6.43    It is alleged that Defendant Russell Speidel engaged in conflict of interest in multiple ways, which include, but are not limited to:

a)      Drafted estate planning documents that included the stated goal of protecting Alexander Thomason that were not in the best interests of his client, Bert

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 37

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1        Stennes and thus his estate;

2     b)    Drafted documents relating to Alexander Thomason's business dealings with

3        his own client, Bert Stennes, that specifically benefitted Alexander Thomason

4        to the detriment of Speidel Bentsen's client, Bert Stennes;

5     c)    Petitioned for the appointment of Cody Gunn to serve as personal

6        representative of both the Estate of Evelyn Stennes and the Estate of Bert

7        Stennes, despite the fact that this placed Cody Gunn in a conflict of interest;

8     d)    Worked with Cody Gunn who was serving as Personal Representative of the

9        Estate of Bert Stennes to prevent the Estate's beneficiaries from receiving

10       information necessary to protect their interests;

11     e)    Worked with Cody Gunn who was serving as Personal Representative of the

12       Estate of Bert Stennes to refuse to comply with court orders requiring the

13       Estate to produce certain documents and information;

14     f)    Charged the Estate of Bert Stennes legal fees to challenge court orders

15       requiring the Estate to produce certain documents and information;

16     g)    Worked with Cody Gunn, who was serving as Personal Representative of the

17       Estate of Bert Stennes, to refuse to comply with court orders requiring the

18       production of attorney files;

19     h)    Counseled, encouraged, and/or authorized Cody Gunn, when he was the

20       Personal Representative of the Estate of Bert Stennes, to file a creditor's claim

21       against the Estate of Bert Stennes by the Estate of Evelyn Stennes;

22     i)    Petitioned the Chelan County Superior Court for the appointment of Daniel

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 38

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Appel as personal representative of both the Estate of Evelyn Stennes and the Estate of Bert Stennes, despite the conflict of interest;

j)    Worked with Daniel Appel, who was serving as Personal Representative of the Estate of Bert Stennes, to prevent the Estate's beneficiaries from receiving information necessary to protect their interests;

k)    Communicated with his client, Bert Stennes, in the presence of Alexander Thomason regarding Mr. Stennes's legal interests, which were in conflict with Alexander Thomason;

l)    Engaged in written communications with his client, Bert Stennes, via Alexander Thomason's email address regarding Mr. Stennes's legal interests which were in conflict with Alexander Thomason; and

m)    Communicated with his client, Bert Stennes, almost exclusively through Alexander Thomason regarding Mr. Stennes's legal interests, which were in conflict with Alexander Thomason.

6.44    Defendant Russell Speidel was negligent in his representation of Bert Stennes.  As a proximate cause of Defendant Russell Speidel's negligence, Bert Stennes suffered damages.

6.45    Defendant Russell Speidel breached his fiduciary duty to Bert Stennes. As a proximate cause of Defendant Russell Speidel's breach of his fiduciary duty, Bert Stennes suffered damages.

6.46    Defendant Russell Speidel's conduct in his representation of Bert Stennes was negligent, and breached his fiduciary duty to Bert Stennes, in multiple ways, which

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 39

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

include, but are not limited to:

a)  Taking his direction about the content of estate planning documents from his client's attorney, despite the fact that doing so would be disadvantageous to his client and ultimately his client's estate;

b)  Failing to uphold his fiduciary duty to his client to prevent him from being taken advantage of by his attorney who sought to procure gifts;

c)  Taking advantage of a vulnerable adult;

d)  Preparing estate planning documents that created testamentary gifts benefitting his client's attorney; and

e)  Attempting to obtain waivers of violations of the Rules of Professional Conduct and legal malpractice claims against his client's attorney by the use of voidable releases.

6.47  Bert Stennes and thus his estate were damaged by Defendant Russell Speidel's conduct as referenced above.

6.48  Bert Stennes was damaged by paying attorney's fees and expenses to Defendant Russell Speidel.

6.49  Bert Stennes and thus his estate were deprived of the use of property and assets as a result of the actions of Defendant Russell Speidel.

6.50  Defendant Russell Speidel, Jean Speidel, Speidel Bentsen, LLP, and their marital community are liable to the Estate of Bert Stennes for a disgorgement of their fees.

**David Bentsen**

6.51  As an attorney representing Bert Stennes, Defendant David Bentsen had a duty to use

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 40

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

that degree of skill, care, diligence, and knowledge possessed and used by a reasonable, careful, and prudent attorney in the State of Washington acting in the same or similar circumstances in his representation of Bert Stennes.

6.52    Defendant David Bentsen breached his duty to Bert Stennes, and negligently failed to take the necessary steps to protect Bert Stennes's rights.

6.53    At all material times, Defendant David Bentsen was an agent or employee of Speidel Bentsen, LLP, and was acting within the course and scope of his employment or agency.

6.54    As an attorney, Defendant David Bentsen owed a fiduciary duty to Bert Stennes. This fiduciary duty requires that all dealings between the attorney and client be characterized by the utmost fairness, honesty and good faith by the attorney to the client.

6.55    The Rules of Professional Conduct and Washington law applicable to all attorneys licensed in the State of Washington require that a lawyer shall provide competent representation to a client. *RPC 1.1*. Defendant David Bentsen failed to meet that standard of care and violated this Rule.

6.56    The Rules of Professional Conduct and Washington law applicable to all attorneys licensed in the State of Washington require that a lawyer shall act with reasonable diligence and promptness in representing a client. *RPC 1.3.*  Defendant David Bentsen failed to meet that standard of care and violated this Rule.

6.57    The Rules of Professional Conduct applicable to all attorneys licensed in the State of Washington state as follows:

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 41

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

**(a)** A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

    **(1)** the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

    **(2)** the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of an independent lawyer on the transaction; and

    **(3)** the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

**(b)** A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

**(c)** A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of the client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include spouse, child, grandchild, parent, grandparent or other relative or individual with who the lawyer or the client maintains a close, familial relationship.

*RPC 1.8.* Defendant David Bentsen was a party to Defendant Alexander Thomason's

actions which violated these Rules.

6.58    The Washington Supreme Court has held: "The relation of attorney and client has

always been regarded as one of special trust and confidence.  The law therefore

requires that all dealings between an attorney and his client shall be characterized by

the utmost fairness and good faith, and it scrutinizes with great closeness all

transactions had between them.  So strict is the rule on this subject that dealings

between an attorney, and his client are held, as against the attorney, to be *prima facie*

fraudulent, and to sustain a transaction of advantage to himself with his client the

attorney has the burden of showing not only that he used no undue influence but that

he gave his client all the information and advice which it would have been his duty to

give if he himself had not been interested, and that the transaction was as beneficial to

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 42

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

the client as it would have been had the client dealt with a stranger." *In Re Beakely*, 6

Wn.2d. 410, 424 (1940). The dealings referenced above were not characterized by the

utmost fairness and good faith. Accordingly, the transactions referenced above are

*prima facie* fraudulent and void at the inception.

6.59   The Rules of Professional Conduct applicable to all attorneys licensed in the State of

Washington prohibit attorneys from making an agreement prospectively limiting the

lawyer's liability to a client for malpractice unless permitted by law and the client is

independently represented by a lawyer in making the agreement.  RPC 1.8(h)(1).

6.60   Defendant David Bentsen drafted and/or caused his client, Bert Stennes, to sign an

Agreement Cancelling Note and Terminating Joint Operating Agreement that

contained extensive exculpatory clauses attempting to relieve Alexander Thomason

from liability for engaging in business dealings with his client, despite the prohibition

against such clauses in the Rules of Professional Conduct.

6.61   Defendant David Bentsen engaged in conflict of interest in multiple ways, which

include, but are not limited to:

a)   Drafted estate planning documents that included the stated goal of protecting

Alexander Thomason that were not in the best interests of his client, Bert

Stennes and thus his estate;

b)   Drafted documents relating to Alexander Thomason's business dealings with

his own client, Bert Stennes, that specifically benefitted Alexander Thomason

to the detriment of Speidel Bentsen's client, Bert Stennes;

c)   Petitioned for the appointment of Cody Gunn to serve as personal

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 43

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

representatives of both the Estate of Evelyn Stennes and the Estate of Bert Stennes, despite the fact that this placed Cody Gunn in a conflict of interest;

d)    Worked with Cody Gunn, who was serving as Personal Representative of the Estate of Bert Stennes, to prevent the Estate's beneficiaries from receiving information necessary to protect their interests.

e)    Worked with Cody Gunn, who was serving as Personal Representative of the Estate of Bert Stennes, to refuse to comply with court orders requiring the Estate to produce certain documents and information.

f)    Charged the Estate of Bert Stennes legal fees to challenge court orders requiring the Estate to produce certain documents and information.

g)    Worked with Cody Gunn, who was serving as Personal Representative of the Estate of Bert Stennes, to refuse to comply with court orders requiring the production of attorney files.

h)    Counseled, encouraged, and/or authorized Cody Gunn, when he was the Personal Representative of the Estate of Bert Stennes, to file a creditor's claim against the Estate of Bert Stennes by the Estate of Evelyn Stennes.

i)    Petitioned the Chelan County Superior Court for the appointment of Daniel Appel as personal representative of both the Estate of Evelyn Stennes and the Estate of Bert Stennes, despite the conflict of interest.

j)    Worked with Daniel Appel, who was serving as Personal Representative of the Estate of Bert Stennes, to prevent the Estate's beneficiaries from receiving information necessary to protect their interests;

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 44

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

k)   Communicated with his client, Bert Stennes, in the presence of Alexander Thomason regarding Mr. Stennes's legal interests, which were in conflict with Alexander Thomason;

l)   Engaged in written communications with his client, Bert Stennes, via Alexander Thomason's email address regarding Mr. Stennes's legal interests which were in conflict with Alexander Thomason; and

m)   Communicated with his client, Bert Stennes, almost exclusively through Alexander Thomason regarding Mr. Stennes's legal interests, which were in conflict with Alexander Thomason.

6.62   Defendant David Bentsen was negligent in his representation of Bert Stennes.  As a proximate cause of Defendant David Bentsen's negligence, Bert Stennes suffered damages.

6.63   Defendant David Bentsen breached his fiduciary duty to Bert Stennes. As a proximate cause of Defendant David Bentsen's breach of his fiduciary duty, Bert Stennes suffered damages.

6.64   Defendant David Bentsen's conduct in his representation of Bert Stennes was negligent, and breached his fiduciary duty to Bert Stennes, in multiple ways, which include, but are not limited to:

a)   Taking his direction about the content of estate planning documents from his client's attorney, despite the fact that doing so would be disadvantageous to his client and ultimately his client's estate;

b)   Failing to uphold his fiduciary duty to his client to prevent him from being taken

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 45

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

advantage of by his attorney who sought to procure gifts;

c)      Taking advantage of a vulnerable adult;

d)      Preparing estate planning documents that created testamentary gifts

benefitting his client's attorney; and

e)      Attempting to obtain waivers of violations of the Rules of Professional Conduct

and legal malpractice claims against his client's attorney by the use of voidable

releases.

6.65    Bert Stennes and thus his estate were damaged by Defendant David Bentsen's conduct

as referenced above.

6.66    Bert Stennes was damaged by paying attorney's fees and expenses to Defendant David

Bentsen.

6.67    Bert Stennes and thus his estate were deprived of the use of property and assets as a

result of the actions of Defendant David Bentsen.

6.68    Defendant David Bentsen, Lindsay Bentsen, Speidel Bentsen, LLP, and their marital

community are liable to the Estate of Bert Stennes for a disgorgement of their fees.

## VII.    SECOND CAUSE OF ACTION –
## BREACH OF FIDUCIARY DUTY

7.1     Plaintiff incorporates by reference Paragraphs 1.1 through 6.68, supra.

7.2     Defendant David Ebenger breached his attorney-client fiduciary duties to Bert Stennes,

which breach was a proximate cause of harm to Bert Stennes and thus his estate.

7.3     Defendant Russell Speidel breached his attorney-client fiduciary duties to Bert

Stennes, which breach was a proximate cause of harm to Bert Stennes and thus his

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 46

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1    estate.

2    7.4    Defendant David Bentsen breached his attorney-client fiduciary duties to Bert Stennes,

3          which breach was a proximate cause of harm to Bert Stennes and thus his estate.

4    7.5    Defendant Alexander Thomason breached his attorney-client fiduciary duties to Bert

5          Stennes, which breach was a proximate cause of harm to Bert Stennes and thus his

6          estate.

7
                              **VIII.    THIRD CAUSE OF ACTION –**
8                             **MALPRACTICE and NEGLIGENCE**
                              **BY A FINANCIAL ADVISOR**
9
     8.1    Plaintiff incorporates by reference Paragraphs 1.1 through 7.5, supra.
10
11   8.2    Defendant Cody Gunn, individually and as Personal Representative of the Estate of

12          Bert S. Stennes; and as an employee or agent of Gunn Capital Management, LLC, a

13          Washington Limited Liability Corporation and as an employee or agent of Garland

14          Capital Management, Inc., failed to use that degree of skill, care, diligence, and

15          knowledge possessed and used by a reasonable, careful, and prudent financial advisor

16          in the State of Washington acting in the same or similar circumstances in his

17          representation of Bert Stennes, which failure was a proximate cause of harm to Bert

18          Stennes and thus his estate.

19   8.3    Amber Gunn is jointly liable for the conduct of Cody Gunn by virtue of their marital

20          community.

21
                              **IX.    FOURTH CAUSE OF ACTION –**
                              **BREACH OF FIDUCIARY DUTY**
22                            **BY A FINANCIAL ADVISOR**

23
     9.1    Plaintiff incorporates by reference Paragraphs 1.1 through 8.3, supra.

_AMENDED_ VERIFIED COMPLAINT FOR                    NELSON BOYD, PLLC
DAMAGES AND DECLARATORY RELIEF – 47               601 Union Street, Suite 2600
                                                    Seattle, Washington 98101
                                                        206/971-7601

9.2   Defendant Cody Gunn, individually and as Personal Representative of the Estate of

Bert S. Stennes; as an employee or agent of Gunn Capital Management, LLC, a

Washington Limited Liability Corporation and as an employee or agent of Garland

Capital Management, Inc., breached his fiduciary duties to Bert Stennes, which breach

was a proximate cause of harm to Bert Stennes and thus his estate.

## X.    FIFTH CAUSE OF ACTION –
## UNDUE INFLUENCE

10.1   Plaintiff incorporates by reference Paragraphs 1.1 through 9.2, supra.

10.2   Defendant David Ebenger's actions constitute the use of undue influence, including the

use of undue influence on a vulnerable adult as defined under RCW 74.34.020.

10.3   Defendant David Ebenger's exercise of undue influence was a proximate cause of harm

to Bert Stennes and thus his estate.

10.4   Defendant Russell Speidel's actions constitute the use of undue influence, including

the use of undue influence on a vulnerable adult as defined under RCW 74.34.020.

10.5   Defendant Russell Speidel's exercise of undue influence was a proximate cause of

harm to Bert Stennes and thus his estate.

10.6   Defendant David Bentsen's actions constitute the use of undue influence, including the

use of undue influence on a vulnerable adult as defined under RCW 74.34.020.

10.7   Defendant David Bentsen's exercise of undue influence was a proximate cause of harm

to Bert Stennes and thus his estate.

10.8   Defendant Alexander Thomason's actions constitute the use of undue influence,

including the use of undue influence on a vulnerable adult as defined under RCW

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 48

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

74.34.020.

10.9 Defendant Alexander Thomason's exercise of undue influence was a proximate cause of harm to Bert Stennes and thus his estate.

10.10 Defendant Cody Gunn's actions constitute the use of undue influence, including the use of undue influence on a vulnerable adult as defined under RCW 74.34.020.

10.11 Defendant Cody Gunn's exercise of undue influence was a proximate cause of harm to Bert Stennes and thus his estate.

## XI.    SIXTH CAUSE OF ACTION – FRAUD

11.1 Plaintiff incorporates by reference Paragraphs 1.1 through 10.11, supra.

11.2 Under Washington law, there are nine elements of fraud.  The elements of fraud are:

(1) Representation of an existing fact;

(2) Materiality of the representation;

(3) Falsity of the representation;

(4) The speaker's knowledge of its falsity;

(5) The speaker's intent that it be acted upon by the plaintiff;

(6) Plaintiff's ignorance of the falsity;

(7) Plaintiff's reliance on the truth of the representation;

(8) Plaintiff's right to rely upon it; and

(9) Resulting damage.

11.3 Business dealings between an attorney and client are prima facie fraudulent and the attorney bears the burden of proving the absence of fraud.

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 49

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

11.4   The conduct of Alexander Thomason, both individually, and in his capacity as an attorney for Bert Stennes, and in his capacity as principal of Defendants Alex Group, LLC, a Washington Limited Liability Corporation; and Maverick Holdings, LLC, a Washington Limited Liability Corporation; and PJA Holdings, Inc., a Washington corporation, constitutes fraud as defined in Paragraph 11.2, supra and Washington law.

11.5   As a result of Defendant Alexander Thomason's conduct, Bert Stennes and thus his estate suffered damages.

11.6   Defendant David Ebenger, individually, and in his capacity as an attorney for Bert Stennes, assisted Bert Stennes's attorney Alexander Thomason in perpetuating a fraud upon Bert Stennes and thus his estate as defined in Paragraph 11.2, supra and Washington law.

11.7   As a result of Defendant David Ebenger's conduct, Bert Stennes and thus his estate suffered damages.

11.8   Defendant Russell Speidel, individually, and in his capacity as an attorney for Bert Stennes and in his capacity as principal of Defendant Speidel Bentsen, LLP, assisted Bert Stennes's attorney Alexander Thomason in perpetuating a fraud upon Bert Stennes and thus his estate as defined in Paragraph 11.2, supra and Washington law.

11.9   As a result of Defendant Russell Speidel's conduct, Bert Stennes and thus his estate suffered damages.

11.10   Defendant David Bentsen, individually, and in his capacity as an attorney for Bert Stennes, and in his capacity as principal of Defendant Speidel Bentsen, LLP, assisted

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 50

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Bert Stennes's attorney Alexander Thomason in perpetuating a fraud upon Bert

Stennes and thus his estate as defined in Paragraph 11.2, supra and Washington law.

11.11   As a result of Defendant David Bentsen's conduct, Bert Stennes and thus his estate

suffered damages.

11.12   The conduct of Defendant Cody Gunn, individually, and in his capacity as investment

advisor to Bert Stennes, and in his capacity and within the scope of his employment at

Gunn Capital Management, LLC, and in his capacity and within the scope of his

employment at Garland Capital Management, Inc., constituted fraud as defined in

Paragraph 11.2, supra and Washington law.

11.13   As a result of Defendant Cody Gunn's conduct, Bert Stennes and thus his estate

suffered damages.

## XII.    SEVENTH CAUSE OF ACTION - BREACH OF WASHINGTON'S CONSUMER PROTECTION ACT

12.1   Plaintiff incorporates by reference Paragraphs 1.1 through 11.13, supra.

12.2   The following actions constitute a violation of the Washington Consumer Protection

Act:

(1) Defendants engaged in unfair or deceptive acts or practices;

(2) That Defendants' acts or practices occurred in the conduct of their trade or commerce;

(3) That Defendants' acts or practices affects the public interest;

(4) That Plaintiff was injured in either its business or property, and

(5) That Defendants' acts or practices were a proximate cause of Plaintiff's injury.

12.3   In the entrepreneurial aspects of the practice of law, in his capacity as an attorney for

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 51

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Bert Stennes, Defendant David Ebenger violated the Washington Consumer Protection Act.

12.4    Bert Stennes and thus his estate suffered damages as a result of David Ebenger's violation of the Washington Consumer Protection Act.

12.5    In the entrepreneurial aspects of the practice of law, in his capacity as an attorney for Bert Stennes, and in his capacity as principal of Defendant Speidel Bentsen, LLP, Defendant Russell Speidel violated the Washington Consumer Protection Act.

12.6    Bert Stennes and thus his estate suffered damages as a result of Russell Speidel's violation of the Washington Consumer Protection Act.

12.7    In the entrepreneurial aspects of the practice of law, in his capacity as an attorney for Bert Stennes, and in his capacity as principal of Defendant Speidel Bentsen, LLP, Defendant David Bentsen violated the Washington Consumer Protection Act.

12.8    Bert Stennes and thus his estate suffered damages as a result of David Bentsen's violation of the Washington Consumer Protection Act.

12.9    In the entrepreneurial aspects of the practice of law, Defendant Alexander Thomason in his capacity as an attorney for Bert Stennes, and in his capacity as principal of Defendants Alex Group, LLC, a Washington Limited Liability Corporation; and Maverick Holdings, LLC, a Washington Limited Liability Corporation; and PJA Holdings, Inc., violated the Washington Consumer Protection Act.

12.10    Bert Stennes and thus his estate suffered damages as a result of Defendant Thomason's violation of the Washington Consumer Protection Act.

12.11    In the entrepreneurial aspects of investment advising, Defendant Cody Gunn in his

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 52

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

capacity as an investment advisor to Bert Stennes, and in his capacity and within the scope of his employment at Gunn Capital Management, LLC, and in his capacity and within the scope of his employment at Garland Capital Management, Inc., violated the Washington Consumer Protection Act.

12.12    Bert Stennes and thus his estate suffered damages as a result of Defendant Gunn's violation of the Washington Consumer Protection Act.

### XIII.    EIGHTH CAUSE OF ACTION –
### UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

13.1    Plaintiff incorporates by reference Paragraphs 1.1 through 12.12, supra.

13.2    Defendants Alexander Thomason, both individually, and in his capacity as the attorney for Bert Stennes, and in his capacity as principal of Defendants Alex Group, LLC, a Washington Limited Liability Corporation; and Maverick Holdings, LLC, a Washington Limited Liability Corporation; and PJA Holdings, Inc., a Washington corporation ("Defendants Thomason") are unjustly enriched by their dealings with Bert Stennes.

13.3    Allowing said Defendants Thomason to continue to hold the benefits of their dealings with Bert Stennes would result in an unearned windfall to said Defendants Thomason to the detriment of the Estate of Bert Stennes.

13.4    Plaintiff requests that the Court find that the benefits of Defendants Thomason's dealings with Bert Stennes be held in constructive trust for the benefit of the Estate of Bert Stennes, to avoid unjust enrichment to said Defendants Thomason to the detriment of the Estate of Bert Stennes.

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 53

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

XIV.    NINTH CAUSE OF ACTION –
EJECTMENT

14.1    Plaintiff incorporates by reference Paragraphs 1.1 through 13.4, supra.

14.2    It is alleged that for many years prior to completion of the purported Boundary Line Adjustment, Bert Stennes used and maintained a well-established driveway for ingress and egress ("Driveway") from Stennes Point Drive to parcel number 2924190050 ("14 Stennes Point Drive").

14.3    It is alleged that the Driveway was the primary means of ingress and egress to the residence on Stennes Point Drive.

14.4    It is alleged that the Boundary Line Adjustment purported to transfer from Bert Stennes to Alex Group a portion of 14 Stennes Point Drive, including the portion of the Driveway fronting Stennes Point Drive.

14.5    It is alleged that Bert Stennes was unaware that the Boundary Line Adjustment would result in the purported loss of frontage along Stennes Point Drive.

14.6    It is alleged that Bert Stennes did not have independent legal counsel representing him in conjunction with the Boundary Line Adjustment or the related impacts and implications on the real estate, including the Driveway and access to 14 Stennes Point Drive.

14.7    It is alleged that subsequent to completion of the purported Boundary Line Adjustment, that Alex Thomason, Katy Thomason,  Alex Group and/or other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason erected a fence, planted trees and installed a shed in a manner that blocks the

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 54

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

Driveway from Stennes Point Drive.

14.8    It is alleged that on or about November 4, 2020, Defendant Katy Thomason, applied to change the name of a portion of Stennes Point Drive to Beach Villa Lane.

14.9    It is alleged that on or about November 18, 2020, Defendant Katy Thomason's application for the name change was approved by the Okanogan County Planning Department.

14.10   It is alleged that Defendant Katy Thomason did not provide notice to Plaintiff of the application for the name change or include Plaintiff or Plaintiff's properties on the application.

14.11   Plaintiff has appealed the name change approval with the Okanogan County Planning Department and the Okanogan Board of County Commissioners alleging it failed to comply with the law for several reasons, including lack of notice to Plaintiff and lack of Plaintiff's requisite approval.

14.12   It is alleged that the road name change application and approval purported to extend Stennes Point Drive through Plaintiff's parcel commonly identified as parcel number 2924190049 ("18 Stennes Point Drive").

14.13   It is alleged that the road name change purports to inextricably link Plaintiff's adjacent properties so that the only means of access to Stennes Point Drive from 14 Stennes Point Drive is through and across 18 Stennes Point Drive.

14.14   It is alleged that the road name change is a continuation of the fraud concerning the Plaintiff's properties and the unlawful blocking of the Driveway on 14 Stennes Point Drive by Defendants Alexander Thomason, Katy Thomason, Alex Group and any and all

_AMENDED_ VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 55

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason.

14.15   It is alleged that the above-conduct has resulted in a diminution of value to both 14 Stennes Point Drive and 18 Stennes Point Drive and will reduce the marketability of both properties.

14.16   It is alleged that the Driveway is reasonably necessary for proper access to the 14 Stennes Point Drive pursuant to its historical use.

14.17   Plaintiff has, or is otherwise entitled to the restoration of, lawful title to the real estate purportedly conveyed via the Boundary Line Adjustment.

14.18   Alternatively, Plaintiff has a valid and established easement right over, across and through the real estate purportedly conveyed via the Boundary Line Adjustment.

14.19   Defendants Alex Thomason, Katy Thomason, and Alex Group are unlawfully in possession of the real estate purportedly conveyed via the Boundary Line Adjustment, or alternatively, Defendants Alex Thomason, Katy Thomason, Alex Group and any and all other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason are unlawfully interfering with Plaintiff's possession and use of that real estate.

14.20   Plaintiff is entitled to possession and use of the real estate purportedly conveyed via the Boundary Line Adjustment, either through ownership thereof or, alternatively, pursuant to Plaintiff's valid and established easement right over, across and through that real estate.

14.21   Plaintiff requests the Court find that Plaintiff owns fee simple title to the real estate

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 56

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

purportedly conveyed via the Boundary Line Adjustment, that Plaintiff is entitled to the possession and use thereof, and oust Defendants Alex Thomason, Katy Thomason, Alex Group and any and all other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason therefrom.

14.22  Alternatively, Plaintiff requests the Court find that Plaintiff has a valid and established easement right over, across and through the real estate purportedly conveyed via the Boundary Line Adjustment and order Defendants Alex Thomason, Katy Thomason, Alex Group and any and all other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason to remove any and all blocking improvements and to cease and desist from interference with the same.

## XV.    REQUEST FOR DECLARATORY RELIEF

15.1  Plaintiff incorporates by reference Paragraphs 1.1 through 14.22, supra.

15.2  Plaintiff requests that the Court declare the rights, status and other legal relations between the Estate of Bert Stennes and Defendants Thomason, regarding all dealings between Defendants Thomason and Bert Stennes.

15.3  Plaintiff requests that the Court enter an order unwinding all dealings and transactions between Bert Stennes and Defendants Thomason and order that the parties be restored to the position they would have been in if the business dealings had never occurred.

## XVI.    RELIEF REQUESTED

As a direct and proximate result of the negligence, breach of fiduciary duty, and other wrongful acts of Defendants, Bert Stennes and thus the Estate of Bert S. Stennes suffered

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 57

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

damages and seeks relief, including but not limited to the following, which shall be proven at the time of trial:

a)  Compensatory damages resulting from the wrongful conduct of any and all Defendants herein;

b)  Monies that Bert Stennes "loaned" and ultimately gave to Defendants Thomason;

c)  Rent paid by Bert Stennes pursuant to the Joint Operating Agreement and/or Joint Orchard Operating Agreement;

d)  Orchard improvements paid or made by Bert Stennes pursuant to the Joint Operating Agreement and/or Joint Orchard Operating Agreement;

e)  Devaluation of property resulting from a Boundary Line Adjustment that decreased the value of Bert Stennes's property for which no consideration was given;

f)  Unauthorized use of the waterline described herein;

g)  Disgorgement of fees from all attorney defendants;

h)  Disgorgement of fees of any sort from Defendant Cody Gunn for investment advisor services;

i)  Disgorgement of fees of any sort that were paid to Defendant Cody Gunn in his role as personal representative of the Estate of Bert Stennes;

j)  Loss of value to the Estate of Bert Stennes due to Cody Gunn's actions as personal representative of the Estate of Bert Stennes;

*AMENDED* VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 58

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

k)      Equitable relief whereby all real property transactions and transfers between Bert Stennes and Defendants Thomason or for the benefit of Defendants Thomason are declared void and said property conveyed to the Estate of Bert Stennes;

l)      Equitable relief whereby all other personal property, including money and other consideration paid or otherwise transferred from Bert Stennes to or for the benefit of Defendants Thomason be conveyed to the Estate of Bert Stennes.

m)     All relief available under the Washington Consumer Protection Act for any and all violations by any and all Defendants;

n)      That the benefits of Defendants Thomason's dealings with Bert Stennes be held in constructive trust for the benefit of the Estate of Bert Stennes, to avoid unjust enrichment to said Defendants Thomason to the detriment of the Estate of Bert Stennes.

o)      That Defendants Alex Thomason, Katy Thomason, Alex Group and any and all other entities owned, controlled or managed by Defendants Alex Thomason and/or Katy Thomason be ousted from the real estate purportedly conveyed by the Boundary Line Adjustment, be ordered to remove blocking improvements from the Driveway, and be ordered to cease and desist from interference with Plaintiff's possession and use of the same.

p)      All attorney's fees and litigation costs incurred by the Estate as a result of this litigation;

AMENDED VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 59

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

q)   All attorney's fees and litigation costs incurred by the Estate, in any litigation, as a result of the actions by any of the Defendants herein

r)   Prejudgment interest on all amounts listed above; and

s)   Such other and further relief as the court deems just and equitable.

DATED this ___|5+___ day of March, 2021.

NELSON BOYD, PLLC

Deborah M. Nelson, WSBA #23087
Nelson Boyd, PLLC
601 Union Street, Ste 2600
Seattle, WA 98101
Telephone: (206) 971-7601
Fax: (206) 577-5035
nelson@nelsonboydlaw.com

Jeffrey D. Boyd, WSBA #41620
Nelson Boyd, PLLC
601 Union Street, Ste 2600
Seattle, WA 98101
Telephone: (206) 971-7601
Fax: (206) 577-5035
boyd@nelsonboydlaw.com

Attorneys for Plaintiff

AMENDED VERIFIED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF – 60

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
206/971-7601

1   STATE OF WASHINGTON      )
                              ) ss.
2   COUNTY OF SPOKANE         )

3

4        STEPHANIE TAYLOR, being first duly sworn upon oath, deposes and states:

5   That she is the Plaintiff in the above-captioned matter, that she has read the foregoing
    Amended Verified Complaint, knows the content thereof, and believes the same to be true.

6        Dated this ___1 3t___ day of March 2021.

7

8

9                                       _____
                                        STEPHANIE TAYLOR
10

11  I certify that I know or have satisfactory evidence that Stephanie Taylor is the person who
    appeared before me on March __5t__, 2021, and signed this Amended Verified Complaint and
12  acknowledged it to be her free and voluntary act.

13

14  _____

15  Lisa A. Graber (printed name)
    NOTARY PUBLIC, State of Washington
16
    My appointment expires _3/3/2021_

17

18

19

20

21

22

23

        AMENDED VERIFIED COMPLAINT FOR                    NELSON BOYD, PLLC
        DAMAGES AND DECLARATORY RELIEF – 61               601 Union Street, Suite 2600
                                                          Seattle, Washington 98101
                                                          206/971-7601

Notary Public
State of Washington
LISA A. GRABER
My Commission Expires
March 03, 2021